# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
### June 3, 2003 Session

## CAROLYN STOVALL, ET AL. v. LOIS E. CLARKE, M.D., ET AL.

**An Appeal By Permission from the Court of Appeals**
**Circuit Court for Williamson County**
**No. II-97652     Russ Heldman, Judge**

---

**No. M2001-00810-SC-R11-CV - Filed September 2, 2003**

---

We granted review in this medical malpractice case to address whether the plaintiff, Carolyn Stovall, established a genuine issue of material fact as to the recognized standard of professional practice in the community in which the defendants, Dr. Lois E. Clarke and Dr. Robert McCain, practiced or in a similar community. The trial court granted summary judgment to the defendants and later denied the plaintiff's motion to alter or amend the summary judgments. On appeal, the Court of Appeals reversed the grant of summary judgment to Dr. Clarke but affirmed the grant of summary judgment to Dr. McCain. After reviewing the record and the applicable authority, we hold that the Court of Appeals correctly determined that the trial court erred in granting summary judgment to Dr. Clarke. We further conclude that the trial court erred in denying the plaintiff's motion to alter or amend the grant of summary judgment to Dr. McCain. Accordingly, the judgment of the Court of Appeals is affirmed in part and reversed in part, and the case is remanded to the trial court for further proceedings.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Affirmed in Part and Reversed in Part; Remanded to Trial Court**

E. RILEY ANDERSON, J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and ADOLPHO A. BIRCH, JR., JANICE M. HOLDER, and WILLIAM M. BARKER, JJ., joined.

Rose P. Cantrell, R. Blake Menzel, and George A. Dean, Nashville, Tennessee, for the appellant, Lois E. Clarke, M.D.

Joe Bednarz, Sr., and Joe Bednarz, Jr., Nashville, Tennessee, for the appellee, Carolyn Stovall.

Phillip North, Michael F. Jameson, and M. Todd Sandahl, Nashville, Tennessee, for the appellee, Robert W. McCain, M.D.

## OPINION

## Background

The plaintiff, Carolyn Stovall, was the wife of the decedent, Gerald Stovall, who had been a patient of the defendants, Dr. Lois E. Clarke and Dr. Robert W. McCain. Both Dr. Clarke, a family medicine physician, and Dr. McCain, a pulmonologist, practiced medicine in Franklin, Tennessee.

Gerald Stovall had a history of smoking cigarettes, high cholesterol, and a family history of heart disease. In March of 1992, Dr. Clarke ordered an electrocardiogram ("EKG") for Stovall, which revealed that he had sustained a possible inferior wall myocardial infarction. In October of 1996, Stovall had a consultation with Dr. Clarke about a second EKG that was performed when he applied for life insurance. Stovall told Dr. Clarke that he was concerned because the results of the 1996 EKG differed from the results of the 1992 EKG.

In January of 1997, Stovall saw Dr. Clarke for symptoms that included shortness of breath and wheezing. Dr. Clarke diagnosed a reflux problem. Several weeks later, Stovall returned and complained of a chest cold and continued wheezing. Dr. Clarke diagnosed an upper respiratory infection and prescribed an antibiotic. In early February of 1997, Stovall returned to Dr. Clarke for a third time with the same symptoms. Dr. Clarke then referred Stovall to Dr. Robert McCain, a pulmonologist, for the respiratory problem, and to Dr. Douglas York, for the gastric symptoms.

On February 28, 1997, Dr. McCain examined Gerald Stovall, who once again reported symptoms that included shortness of breath and a persistent cough. Dr. McCain concluded that Stovall had been in good health, found that his cardiac and lung evaluations were normal, and determined that he had never complained of chest pain. Dr. McCain diagnosed Stovall with bronchitis aggravated by smoking, for which he was being treated with antibiotics, and he did not order additional tests.

On March 11, 1997, Gerald Stovall died from what was later determined to be coronary artery disease. The plaintiff, Carolyn Stovall, filed malpractice actions against Dr. Lois E. Clarke and Dr. Robert W. McCain, alleging that both physicians negligently failed to perform appropriate diagnostic tests and failed to discover the coronary heart disease that caused Gerald Stovall's death.

## Motions for Summary Judgment

The defendants, Dr. Clarke and Dr. McCain, denied the negligence allegations and filed similar motions for summary judgment. They argued that the plaintiff had produced no expert witnesses who were familiar with the recognized standard of professional practice in the community in which the alleged negligence occurred or a similar community as required in a medical malpractice action. See Tenn. Code Ann. § 29-26-115(a) (Supp. 2002). The defendants also argued that their treatment and care of Gerald Stovall had conformed to the recognized standard of

professional care in Williamson County, Tennessee, and that their acts or omissions did not cause or contribute to his death.[1]

The plaintiff's response to Dr. Clarke's motion for summary judgment included, among other documents, the deposition of Dr. Jack Uhrig, an internal medicine specialist in the State of Missouri. Although Dr. Uhrig conceded that he had never practiced medicine or treated any patients in Williamson County, Tennessee, he stated that he was familiar with the "locality standard" because he had reviewed over twenty medical charts from the State of Tennessee and had testified in three malpractice cases in the middle Tennessee area. Moreover, Dr. Uhrig stated that his "review of the medical records and depositions" demonstrated that "Dr. Lois E. Clarke and Robert W. McCain, M.D., both deviated from the standard of care/standard of acceptable professional practice required of physicians in Franklin, Tennessee or in a similar community in the years 1996 and/or 1997."

In addition to Dr. Uhrig's deposition, the plaintiff submitted a supplemental affidavit in which Dr. Uhrig explained his familiarity with the applicable standard of professional care in Franklin, Tennessee:

> For the past 18 years, I have been seeing patients like Gerald Dewayne Stovall in a small community. A majority of patients that I see have underlying cardiology problems, and other physicians in this community frequently refer patients to me that have cardiology problems. . . . I am intricately familiar with the standard of care as it applies to the work-up of patients with coronary artery disease. I consider Franklin, Tennessee to be a similar community to Marshall, Missouri, as it pertains to the facts and circumstances of this case.

Dr. Uhrig said that "the standard of care for treating a patient like Gerald Stovall, with underlying coronary disease, . . . would be exactly the same throughout all 50 states, possibly with the exception of some very primitive areas . . . ."

Dr. Uhrig's affidavit reiterated that he was familiar with the locality standard of care because he had "reviewed over 20 charts from the state of Tennessee in order to render an opinion as to whether or not malpractice occurred" and had "testified . . . in 3 medical malpractice cases in the middle Tennessee area." Dr. Uhrig also said that he had reviewed additional information[2] as well:

---

[1] Dr. Clarke's motion for summary judgment was accompanied by, among other documents, the affidavit of Dr. Summer Chaffin, who stated that Dr. Clarke's treatment of Gerald Stovall conformed to the standard of care in Williamson County, Tennessee. Similarly, Dr. McCain's motion for summary judgment was accompanied by the affidavit of Dr. Michael T. McCormack, who stated that Dr. McCain's treatment of Gerald Stovall conformed to the standard of care in Williamson County, Tennessee.

[2] The information included the statement of the Williamson County Medical Center's CEO contained on the hospital's web page, population statistics for Williamson County, and a document listing medical specialities available
(continued...)

I have also been provided with additional specific information about the Franklin, Tennessee community and the Williamson County Medical Center. I have also been informed that the Williamson County Medical Center has approximately 140 beds and that there are approximately 160 physicians on staff, with approximately 80 of them being active and 80 of them being associated. Also, there is a listing of specialties that are represented at the Williamson County Medical Center . . . . I have also been provided other statistical data about Williamson County and the hospital . . . .

Although Dr. Uhrig stated that the "national standard of care for treating such patients [as the deceased] is exactly the same as the locality standard," he clarified that he was "very familiar with the legal ramifications of a national standard of care verses [sic] a local standard" and that he applied "the locality standard in this case."

The plaintiff's response opposing Dr. McCain's motion for summary judgment included the deposition of Dr. Ronald Krone, a board certified cardiologist who, like Dr. Uhrig, practiced medicine in Missouri. Although Dr. Krone admitted that he had never practiced medicine or treated any patients in Franklin, Tennessee, he testified by deposition that Dr. McCain's failure to diagnose coronary artery disease and to pursue the necessary treatment contributed to the decedent's death. In his supplemental affidavit, Dr. Krone later said that he had been furnished "statistical data" about the medical resources in Franklin, Tennessee, that cardiologists and cardiac surgeons "were available in the immediate area," and that "the standard of care issues and causation issues that apply to the facts and circumstances of this case are the same in the St. Louis area as they are in the Nashville area."

After considering the medical records, depositions, and affidavits, the trial court granted summary judgment to both Dr. Clarke and Dr. McCain. The trial court's written order, however, did not include specific findings or reasons for its conclusion.

## Motion to Alter or Amend

The plaintiff filed a motion to alter or amend the trial court's ruling granting summary judgment to Dr. Clarke and Dr. McCain. See Tenn. R. Civ. P. 59.04. The motion to alter or amend was supported by affidavits from Dr. Lawrence Golusinski, Dr. Krone, and Dr. Peter Tuteur.

Dr. Golusinski, a physician licensed in Georgia and North Carolina, stated that he was familiar with medical practice in Franklin, Tennessee, based upon statistical information he had reviewed. He believed that Dr. Clarke did not satisfy the standard of care because she failed to investigate the decedent's progressively abnormal EKG results, failed to investigate the decedent's

---

[2](...continued)
at the Williamson County Medical Center.

elevated lipids, and failed to investigate symptoms "highly suggestive of congestive heart failure." Dr. Golusinski stated that compliance with the applicable standard of care would have led to a proper diagnosis of the decedent and probable coronary bypass surgery.

Dr. Krone's affidavit once again stated that he was familiar with the applicable standard of care for family practitioners in Franklin, Tennessee, and that Dr. Clarke failed to satisfy this standard. Dr. Krone stated:

> Based on the information that was available to Dr. Clarke, she had a duty to appropriately investigate the signs and symptoms, which were highly suggestive, of congestive heart failure or left ventricular dysfunction, or ischemia. In the alternative, she could have fulfilled her duty to investigate by appropriately referring [the decedent] to a cardiologist for investigation and evaluation.

Dr. Krone concluded that Dr. Clarke's compliance with the standard of care would have led to probable coronary bypass and that the decedent would have survived.

Dr. Tuteur, a pulmonologist in Missouri, stated that he had reviewed statistical information about Franklin, Tennessee, and he considered it to be similar to the medical community in which he practiced. He stated that Dr. McCain failed to take a detailed and meaningful medical history, failed to investigate other causes for the decedent's shortness of breath and cough, and failed to consider coronary artery disease as a potential cause of Stovall's symptoms. Dr. Tuteur believed that Dr. McCain's compliance with the applicable standard of care in February of 1997 would have led to a correct diagnosis and the proper medical or surgical treatment of Gerald Stovall's heart condition.

The trial court considered the affidavits in support of the plaintiff's motion to alter or amend over the defendants' objections that they had not been timely filed. The trial court nonetheless concluded that summary judgment had been properly granted to Dr. Clarke and Dr. McCain, and it denied the motion to alter or amend.

### Court of Appeals' Ruling

The Court of Appeals concluded that the trial court erred in awarding summary judgment to Dr. Clarke because "the testimony of the plaintiff's expert, Dr. Uhrig, sufficiently demonstrated knowledge of the standard of care applicable to a community similar to Franklin" and did "no violence to the locality rule." The court reasoned that the "plaintiff's experts, apparently reacting to their lack of geographical information and medical statistics about Franklin, undertook to apprize themselves of these deficiencies and to acquire knowledge of Franklin and communities similar to their locale."

The Court of Appeals further concluded, however, that the trial court correctly granted summary judgment to Dr. McCain because there was no genuine issue as to a material fact on the

issue of causation.[3] In sum, the court held that the plaintiff did not show that any act or failure to act by Dr. McCain caused the decedent "to suffer injuries that would not otherwise have occurred." The court also concluded that the trial court properly denied the motion to alter or amend the summary judgment awarded to Dr. McCain.

We granted this appeal to review these important issues.

## Standard of Review

A party is entitled to summary judgment where he or she establishes that there is no genuine issue as to any material fact and that a judgment may be rendered as a matter of law. Penley v. Honda Motor Co., 31 S.W.3d 181, 183 (Tenn. 2000); see also Tenn. R. Civ. P. 56.04. In reviewing a motion for summary judgment, the Court must examine the evidence and all reasonable inferences from the evidence in a light most favorable to the non-moving party. Webber v. State Farm Mut. Auto. Ins. Co., 49 S.W.3d 265, 269 (Tenn. 2001). Our review of the trial court's ruling is de novo. Id.

A party may file a motion to alter or amend a judgment within thirty (30) days after its entry. See Tenn. R. Civ. P. 59.04. When additional evidence is presented in support of such a motion, the trial court should consider the factors applicable to a motion to revise a partial summary judgment pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure: the moving party's effort to obtain the evidence in responding to the summary judgment; the importance of the new evidence to the moving party's case; the moving party's explanation for failing to offer the evidence in responding to the summary judgment; the unfair prejudice to the non-moving party; and any other relevant consideration. Harris v. Chern, 33 S.W.3d 741, 744 (Tenn. 2000) ("Cases analyzing Rule 59.04 motions to alter or amend . . . offer some guidance in determining the standard for revising non-final orders."). The trial court's ruling on a motion to alter or amend will be reversed only for an abuse of discretion. Id. at 746.

## Analysis

The defendant, Dr. Lois E. Clarke, argues that the Court of Appeals erred in reversing the summary judgment because the trial court properly determined that the plaintiff's expert witnesses failed to demonstrate familiarity with the recognized standard of acceptable professional practice in Franklin, Tennessee, or in a similar community. See Tenn. Code Ann. § 29-26-115(a)(1) (Supp. 2002). The plaintiff, Carolyn Stovall, responds that the Court of Appeals properly reversed the summary judgment granted to Dr. Clarke but erred in affirming the summary judgment granted to Dr. McCain on the ground that the plaintiff failed to establish that McCain's acts or omissions

---

[3] Upon reaching this conclusion, the Court of Appeals did not address the recognized standard of professional practice issue with regard to Dr. McCain.

resulted in injuries that otherwise would not have occurred. See Tenn. Code Ann. § 29-26-115(a)(3) (Supp. 2002).[4]

## Medical Malpractice

We begin our review by examining the requirements for establishing a medical malpractice action in Tennessee. See Tenn. Code Ann. § 29-26-115(a) (Supp. 2002). The relevant statute provides that a plaintiff in a malpractice action shall have the burden of proving:

(1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which the defendant practices or in a similar community at the time the alleged injury or wrongful action occurred;

(2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and

(3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.

Tenn. Code Ann. § 29-26-115(a) (Supp. 2002) (emphasis added).

With these statutory provisions and standards of review in mind, we now turn to the summary judgment issues raised with respect to each of the defendants, Dr. Clarke and Dr. McCain.

## Summary Judgment for Defendant Clarke

Although the trial court did not make specific findings of fact, the Court of Appeals determined that the summary judgment granted to Dr. Clarke was based on the standard of care requirement set forth in Tennessee Code Annotated section 29-26-115(a)(1). This statute embraces the so-called "locality rule," which requires that the standard of professional care in a medical

---

[4] Dr. McCain argues that he is not properly before the Court because the plaintiff did not seek review of the Court of Appeals' ruling with respect to his summary judgment. Although it is clear that the plaintiff did not file her own application for permission to appeal, she did raise the McCain summary judgment issue in the Court of Appeals and in her supplemental brief in opposition to Dr. Clarke's appeal to this Court. See Tenn. R. App. P. 13(a) (Stating that separate applications for permission to appeal are not required); Tenn. R. App. P. 11 (Appellee may raise issues allegedly decided erroneously, as stated in the 1999 Advisory Commission Comments). Accordingly, in the interest of efficiently addressing all of the issues presently before the Court, we have elected to review the Court of Appeals' decision with respect to each of the summary judgments rulings.

malpractice action be based upon "the community in which the defendant practices or in a similar community." As this Court recently explained:

> A medical expert relied upon by a plaintiff must have knowledge of the standard of professional care in the defendant's applicable community or knowledge of the standard of professional care in a community *that is shown to be similar* to the defendant's community.

Robinson v. LeCorps, 83 S.W.3d 718, 724 (Tenn. 2002). We also clarified that while an expert's discussion of a national standard of care does not require exclusion of the testimony, "such evidence may not substitute for evidence that first establishes the requirements of Tenn. Code Ann. § 29-26-115(a)(1)." Id.; see also Sutphin v. Platt, 720 S.W.2d 455, 457 (Tenn. 1986).

In Robinson, this Court held that the trial court properly excluded testimony from an expert witness who purported to testify about the standard of care for orthopaedic surgeons in Nashville, Tennessee. The expert testified that

> Nashville is certainly recognized as a regional medical center, and communication and training are such . . . that the two standards, locally, as held in Nashville and for that matter where I practiced in Johnson City, would be expected to be the same, and also the same as a national standard.

Robinson, 83 S.W.3d at 721.[5] In holding that the testimony failed to satisfy Tennessee Code Annotated section 29-26-115(a)(1), we stressed that the expert did not "relate the basis for his knowledge of the standard of care in Nashville or indicate why the Nashville medical community was similar to, and thus had the same standard of professional care as the community with which [the expert] was familiar." Id. at 725.

In this case, contrary to Robinson, we agree with the Court of Appeals' assessment that the plaintiff presented expert testimony establishing the recognized standard of acceptable professional practice in Franklin, Tennessee, or in a similar community. See Tenn. Code Ann. § 29-26-115(a)(1) (Supp. 2002). First, Dr. Uhrig did not rely upon a national standard of care, nor did he simply equate the local standard with a national standard. Moreover, although Dr. Uhrig had never practiced medicine in the State of Tennessee, he testified that he had reviewed over twenty medical charts from the State of Tennessee and had testified in three other malpractice cases in middle Tennessee. In addition, Dr. Uhrig stated in his supplemental affidavit that he had reviewed statistical information about the medical community in Williamson County, Tennessee, which included information about the medical specialists and resources available at the Williamson County Medical Center.

---

[5] The expert also had added that orthopaedic surgeons from Johnson City or Nashville "would stand the same test and would be expected to have the same knowledge and to practice in very similar fashions by the American Board of Orthopaedic Surgery." Id. at 722.

Unlike the expert proof in <u>Robinson</u>, Dr. Uhrig also expressed understanding of the locality rule and explained that he had applied the locality standard of care – and not a national standard – to the facts and circumstances in this case. Moreover, Dr. Uhrig did not simply offer a vague, conclusory statement that he was familiar with the local standard but instead showed some underlying basis for his testimony. In sum, all of these factors distinguish this case from <u>Robinson</u> and should be considered by the trial court when determining whether an expert's testimony satisfies the requirements of Tennessee Code Annotated section 29-26-115(a)(1).

Dr. Clarke, however, contends that the trial court should not have considered Dr. Uhrig's supplemental affidavit and that his statements were based on information provided several years after the alleged malpractice in this case. We are not persuaded. First, we find no error in the trial court's consideration of Dr. Uhrig's supplemental affidavit because it was filed in opposition to the defendant's motion for summary judgment before the trial court's ruling. Second, we note that Dr. Clarke's arguments essentially contest the *weight* of Dr. Uhrig's statements and thus misapprehend the procedural context of this case: the proper analysis with respect to summary judgment is whether the evidence, when viewed in a light most favorable to the plaintiff, raises a genuine issue as to a material fact.

Accordingly, we conclude that the Court of Appeals properly held that the trial court erred in granting summary judgment to Dr. Clarke. It follows that the trial court's denial of the plaintiff's motion to alter or amend the summary judgment in favor of Dr. Clarke was also erroneous.[6]

## Summary Judgment for Defendant McCain

Although the trial court did not make specific findings of fact, the Court of Appeals upheld the summary judgment in favor of Dr. McCain after finding that the plaintiff failed to establish causation. <u>See</u> Tenn. Code Ann. § 29-26-115(a)(3) (Supp. 2002). The court reasoned that the plaintiff "failed to demonstrate that she will be able to prove that any act or failure to act by Dr. McCain caused her decedent to suffer injuries that otherwise would not have occurred."

The plaintiff opposed Dr. McCain's motion for summary judgment by relying primarily on the testimony and supplemental affidavit of Dr. Ronald Krone with regard to the causation issue. Dr. Krone's initial affidavit stated that he was familiar with the applicable standard of care in the field of cardiology based on information he had reviewed with regard to the medical resources in Williamson County, Tennessee. Dr. Krone concluded as follows:

> [I]t is my opinion that if Gerald Dewayne Stovall had been specifically evaluated for coronary artery disease <u>in January of 1997 or earlier</u>, he would have been diagnosed as having coronary artery

---

[6] As we have reached this conclusion based solely on the testimony and supplemental affidavit of Dr. Uhrig, we need not reach the question of whether the trial court was required to consider the supplemental affidavits in ruling on the plaintiff's motion to alter or amend as it applied to the summary judgment in favor of Dr. Clarke.

disease and he would have probably undergone coronary by-pass surgery. The survival rate for that operation would have been approximately 95 to 99%, and in my opinion, he would have had a better than 50% chance of surviving for 10 years. Therefore, it is my opinion that Gerald Dewayne Stovall, more likely than not, would have been alive today, if he had received appropriate cardiac evaluations.

(Emphasis added).

Dr. McCain did not examine Gerald Stovall until February 28, 1997, *i.e.*, one month *after* the January 1997 date cited by Dr. Krone. As a result, the Court of Appeals correctly concluded that the plaintiff's response to the motion for summary judgment failed to demonstrate that any act or omission by Dr. McCain resulted in an injury that otherwise would not have occurred. Because of the plaintiff's motion to alter or amend, however, this does not dispose of the inquiry.

As we noted earlier, the plaintiff filed a motion to alter or amend the summary judgment in favor of Dr. McCain. The motion to alter or amend was accompanied by, among other materials, the affidavit of Dr. Peter Tuteur, a pulmonologist from Missouri. Dr. Tuteur concluded that Dr. McCain failed to take a complete medical history; that Dr. McCain failed to investigate other causes for Stovall's symptoms, including coronary artery disease; and that "if Robert W. McCain had complied with the standard of care required of him in February of 1997 during his pulmonary consultation, Mr. Stovall's underlying heart condition would have been diagnosed, and he would probably have undergone successful medical and or surgical management of his heart problem," and that "to a reasonable degree of medical certainty, he would be alive today."

As a threshold issue, we find that the trial court correctly agreed to consider the three additional affidavits submitted by the plaintiff in support of the motion to alter or amend the judgment. Indeed, the trial court acknowledged that it had agreed in advance to allow the plaintiff to submit additional evidence, and it expressly stated that it had considered the relevant factors set forth in Harris v. Chern, 33 S.W.3d 741 (Tenn. 2000). Accordingly, we agree with the Court of Appeals' observation that the trial court properly considered the additional evidence.

We disagree, however, with the Court of Appeals' determination that the trial court properly found that the new affidavits, including the affidavit of Dr. Tuteur, failed to raise a genuine issue of material fact as to causation based on the acts or omissions of Dr. McCain. The above quoted statement from Dr. Tuteur reflects his opinion that had Dr. McCain reached the right diagnosis, the decedent would have received medical or surgical treatment for his underlying heart condition and that the decedent, more likely than not, would have survived.

On appeal, Dr. McCain argues that Dr. Tuteur was not qualified in the field of cardiology, that he was not competent to testify about the applicable standard of care, and that his statements were vague and conclusory. These arguments, however, take issue primarily with Dr. Tuteur's

-10-

qualifications and the *weight* that should be given to his opinions. As we pointed out earlier, these are issues for trial and not for summary judgment. The critical question is whether there was a genuine issue of material fact with regard to causation based on the acts or omissions of Dr. McCain. We conclude that the evidence, when viewed in a light most favorable to the plaintiff, raised a genuine issue of material fact with regard to causation. Accordingly, the trial court erred in denying the plaintiff's motion to alter or amend the summary judgment granted to Dr. McCain.

### Conclusion

After reviewing the record and the applicable authority, we hold that the Court of Appeals correctly determined that the trial court erred in granting summary judgment to Dr. Clarke. We further conclude that the trial court erred in denying the plaintiff's motion to alter or amend the summary judgment granted in favor of Dr. McCain. Accordingly, the judgment of the Court of Appeals is affirmed in part and reversed in part, and the case is remanded to the trial court for further proceedings. The costs of the appeal shall be taxed equally between the defendants, Dr. Lois E. Clarke and Dr. Robert McCain, for which execution shall issue if necessary.

_____
E. RILEY ANDERSON, JUSTICE