# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
August 5, 2009 Session

## ELIZABETH BURKS v. THE KROGER COMPANY ET AL.

**Appeal from the Circuit Court for Montgomery County**
**No. MC CC CV OD 06-260     Ross H. Hicks, Judge**

---

**No. M2008-02664-COA-R3-CV**
**and**
**No. M2008-02667-COA-R3-CV - Filed November 23, 2009**

---

This is a negligence action resulting from a slip and fall by a customer at a Kroger grocery store. The plaintiff slipped on a pool of water created by one of several leaks in the roof of the grocery store. The plaintiff filed suit against three defendants, The Kroger Company, Roof Management, Inc., a roofing consultant responsible for facilitating necessary repairs to the roof of the grocery store, and Village Roofing Company, Inc., the roofing contractor which made repairs to the roof when called upon to do so. Village Roofing and Roof Management each filed motions for summary judgment. The trial court granted summary judgment to both Village Roofing and Roof Management finding they did not owe a duty of care to the plaintiff and if they did owe a duty that their acts and omissions were not the proximate cause of the plaintiff's injuries. We have determined there are genuine issues of material fact that preclude a determination of whether Village Roofing or Roof Management owed a duty of care to the plaintiff or whether their actions were or were not the legal cause of Ms. Burks' injuries. Therefore, we reverse the grant of summary judgment to Village Roofing and Roof Management and remand for further proceedings.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
### Reversed and Remanded

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, P.J., M.S., and RICHARD H. DINKINS, J., joined.

John C. Ryland, Memphis, Tennessee, for the appellant, Elizabeth Burks.

Michael H. Johnson and Melissa Bradford Muller, Nashville, Tennessee, for the appellant, The Kroger Company.

Winston N. Harless and Mary Beth Haltom, Nashville, Tennessee, for the appellee, Village Roofing Company, Inc.

Richard C. Mangelsdorf, Jr., Nashville, Tennessee, for the appellee, Roof Management, Inc.

William H. Poland, Clarksville, Tennessee, for the Intervenor Appellant, BlueCross BlueShield of Tennessee, Administrator for Swift Industrial Health and Benefit Plan.

**OPINION**

The event at issue occurred inside the Kroger grocery store located at 1489 Madison Street in Clarksville, Tennessee on the evening of August 2, 2005, when a customer of the store fell and was seriously injured from the fall.

A rainstorm passed over the store earlier in the day, however, it was not raining when Elizabeth Burks, a customer, entered the store that evening. She obtained a shopping basket and proceeded inside the store. As she walked through the area between the checkout registers and the produce section, she slipped on a pool of water and fell. The pool of water was the result of one of many leaks in the roof that evening. As a result of her fall, Ms. Burks, 32 years old at the time, sustained serious and permanent injuries, including a broken right hip for which she underwent three surgeries and received a total hip replacement.

On July 21, 2006, Ms. Burks filed this action against three defendants, The Kroger Company, and two roofing companies, Roof Management, Inc. and Village Roofing, Inc., alleging that their negligence was the cause-in-fact and legal cause of her injuries.[1] The defendants filed separate Answers, each denying liability for her injuries. Roof Management and Village Roofing specifically asserted that they did not owe a duty of care to Ms. Burks and that they did not breach a duty of care. The scope of services rendered by Roof Management and Village Roofing, and the facts relevant to the issues on appeal, are summarized below.

Roof Management, a commercial roofing consulting and design company, had served as the roofing consultant, broker, and facilitator for Kroger since 2002. As part of its service, Roof Management made periodic inspections of stores in the region and submitted recommendations to Kroger concerning the condition of its roofs and whether maintenance, repair, or replacement was indicated. Once authorized by Kroger, Roof Management would broker agreements with roofing contractors and manufacturers to facilitate the work approved by Kroger. Further, when the Engineering Department of Kroger notified Roof Management of a problem at a particular store by forwarding a "Leak Repair Notice," Roof Management would either inspect the roof or notify a roofing contractor in the area of the problem and the roofing contractor would inspect the roof and make the necessary repairs, or the contractor would submit a report of its findings and recommendations to Roof Management to seek approval prior to proceeding with repairs.

Village Roofing, a roofing contractor, was an approved vendor for Kroger in the Clarksville area. The general but unwritten protocol by which Village Roofing was called upon to make repairs

---

[1]Ms. Burks amended her original complaint on August 16, 2006. BlueCross/BlueShield of Tennessee intervened in September of 2007 to assert a subrogation claim for medical expenses it claimed to have paid on behalf of Ms. Burks. BlueCross/BlueShield of Tennessee adopted by reference the brief of Ms. Burks.

in the Clarksville area was as follows. After receiving the Leak Repair Notice from Kroger, Roof Management notified Village Roofing of the problem and Village Roofing went to the store, identified the source of the leak, and made the repairs it deemed appropriate. On one occasion, which is pertinent to this appeal, Village Roofing made repairs to the roof at the Clarksville store and it additionally submitted a written recommendation to Roof Management that more extensive repairs were needed to remedy the recurring leaks.[2]

The first time Village Roofing was called upon to work on the roof of the Madison Street store was on December 29, 2004, following a severe winter storm. Upon inspection of the roof, Village Roofing discovered that the entire roof was covered with five inches of ice. Village Roofing notified Roof Management that it could not make any repairs that day due to the thick layer of ice. Two days later, after the ice melted, Village Roofing returned to the store to make repairs, at which time it discovered and reported to Roof Management that there was a 70-foot "split" in the roof. Roof Management authorized Village Roofing to patch the split, after which Village Roofing submitted its invoice to Roof Management. Thereafter, the Madison Street store continued to experience roof leaks and Village Roofing was called upon to make additional repairs on January 4, 2005 and January 18, 2005.

As a consequence of the recurring roof problems at the Madison Street store, John McGraw of Roof Management, performed a Leak Investigation on February 1, 2005, during which he identified splits in the roof, one of which was approximately 150 feet across the front of the store above the area where customers entered the store. Based upon his inspection, he concluded that the thick layer of ice in December had compromised the integrity of the roof and that the roof needed to be replaced. Mr. McGraw then submitted a Leak Investigation Report to Kroger's Engineering Department in which he recommended that the entire roof of the Madison Street store be replaced "in 2005." Mr. McGraw additionally spoke to "someone in Kroger's engineering department" regarding the seriousness of the roof problem, who responded by stating that Kroger did not have the money to replace the roof at that time and to continue making repairs as needed.

After Mr. McGraw's recommendation to replace the entire roof at the Madison Street store was either deferred or rejected, management at that store continued to experience and report numerous and recurring leaks to the Engineering Department. The record reflects that leaks were reported on at least four additional occasions prior to Ms. Burks' fall. On each of these occasions, the Engineering Department submitted a Leak Repair Notice to Roof Management, which in turn notified Village Roofing to inspect the roof and make repairs. The last time Village Roofing was notified of a leak prior to Ms. Burks' fall was on July 12, 2005. The following day, Village Roofing sent a crew to make repairs, and repairs were made that day. This time, in addition to making repairs, Village Roofing submitted a written recommendation to Roof Management that "extensive repairs"

---

[2] As will be discussed in more detail later, Village Roofing believed it needed express approval from Roof Management or Kroger before making repairs as extensive and costly as it had recommended for the Clarksville store.

were needed to fully repair the roof.[3] The recommendation was set forth on the July 14, 2005 invoice that Roof Management received on July 18, 2005. Village Roofing never received a response from Roof Management or Kroger regarding its recommendation and Village Roofing was not called upon to make any further repairs prior to Ms. Burks' fall. Because Village Roofing did not believe it was authorized to make extensive repairs without express authorization, the extensive repairs it had recommended on July 14, 2005 were not made prior to Ms. Burks' fall on August 2, 2005.

This action was commenced on July 21, 2006. Following extensive discovery, Roof Management and Village Roofing each filed a motion for summary judgment. The motion for summary judgment by Roof Management was granted based upon the trial court's findings that there were no genuine issues of material fact, that Roof Management did not owe a legal duty to Ms. Burks, and that there was no evidence that the conduct of Roof Management was the proximate or legal cause of her injuries. The motion for summary judgment by Village Roofing was granted based upon the findings that there were no genuine issues of material fact, that Village Roofing owed no duty to Ms. Burks as Village Roofing's conduct did not pose an unreasonable or foreseeable risk of harm to her, and that Village Roofing's actions were not the proximate or legal cause of Ms. Burks' injuries.

Ms. Burks and Kroger each filed a notice of appeal. Ms. Burks appeals the summary dismissal of both Roof Management and Village Roofing. Kroger appeals the summary dismissal of Roof Management, but not Village Roofing. It is contended on appeal that the trial court erred in granting summary judgment to Roof Management and Village Roofing.

## STANDARD OF REVIEW

This appeal arises from the grant of summary judgment to the defendants, Roof Management and Village Roofing. Summary judgment is appropriate when a party establishes that there is no genuine issue as to any material fact and that a judgment may be rendered as a matter of law. Tenn. R. Civ. P. 56.04; *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003). It is appropriate in virtually all civil cases that can be resolved on the basis of legal issues alone. *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993); *Pendleton v. Mills*, 73 S.W.3d 115, 121 (Tenn. Ct. App. 2001). It is not appropriate when genuine disputes regarding material facts exist. *See* Tenn. R. Civ. P. 56.04. The party seeking summary judgment bears the burden of demonstrating that no genuine disputes of material fact exist and that the party is entitled to judgment as a matter of law. *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002). To be entitled to summary judgment, the moving party must affirmatively negate an essential element of the nonmoving party's claim *or* show that the moving

---

[3] The Vice-President of Village Roofing, Daniel Garman, explained in a deposition why Village Roofing did not make the recommended repairs on July 13, 2005. He stated that Village Roofing was not authorized to do extensive work or incur extraordinary expenses without specific approval from either Roof Management or Kroger. Mr. Garman's testimony was supported by a vice-president of Roof Management. Kroger's Maintenance Engineer, Timothy Crowder, disputed this fact in his deposition, stating that no additional authorization was needed for Village Roofing to make the necessary repairs.

party cannot prove an essential element of the claim at trial. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 83 (Tenn. 2008).

Summary judgments do not enjoy a presumption of correctness on appeal. *BellSouth Adver. & Publ'g Co. v. Johnson*, 100 S.W.3d 202, 205 (Tenn. 2003). This court makes a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1977). We consider the evidence in the light most favorable to the nonmoving party and resolve all inferences in that party's favor. *Stovall*, 113 S.W.3d at 721; *Godfrey*, 90 S.W.3d at 695. When reviewing the evidence, we first determine whether factual disputes exist. If a factual dispute exists, we then determine whether the fact is material to the claim or defense upon which the summary judgment is predicated and whether the disputed fact creates a genuine issue for trial. *Byrd*, 847 S.W.2d at 215.

A party is entitled to summary judgment only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. A properly supported motion for summary judgment must show that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 88 (Tenn. 2000); *McCarley v. W. Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998). If the moving party makes a properly supported motion, then the nonmoving party is required to establish the existence of the essential elements of the claim. *McCarley*, 960 S.W.2d at 588; *Byrd*, 847 S.W.2d at 215. If, however, the moving party does not properly support the motion, then the nonmoving party's burden to produce either supporting affidavits or discovery is relieved and the motion must fail. *McCarley*, 960 S.W.2d at 588; *Martin,* 271 S.W.3d at 83.

To make this showing and shift the burden of production, a moving party may: 1) affirmatively negate an essential element of the nonmoving party's claim; or 2) show that the nonmoving party cannot prove an essential element of the claim at trial. *Martin*, 271 S.W.3d at 83; *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 5 (Tenn. 2008); *Byrd*, 847 S.W.2d at 215 n.5. Whichever approach the moving party takes, both require more than assertions of the nonmoving party's lack of evidence. *Martin*, 271 S.W.3d at 83-84. In addition, the moving party must present evidence that more than "raises doubts" about the ability of the nonmoving party to prove its claim at trial. *Id.* at 84. The moving party must produce evidence or refer to previously submitted evidence. *Id.*; *accord Hannan*, 270 S.W.3d at 5. Thus, to negate an essential element of a claim, a moving party must refer to evidence that tends to disprove an essential element of the claim made by the nonmoving party. *Martin*, 271 S.W.3d at 84.

ANALYSIS

THE ELEMENTS OF DUTY AND BREACH OF DUTY

In order to prevail on a claim of negligence, the plaintiff must prove by a preponderance of the evidence the five essential elements of a claim of negligence. *Downs ex rel. Downs v. Bush*, 263 S.W.3d 812, 819 (Tenn. 2008). The first two essential elements are that the defendant owed a duty of care to the plaintiff and that the defendant's conduct fell below the applicable standard of care, which amounts to a breach of that duty. *See Staples v. CBL & Assocs.*, 15 S.W.3d 83, 89 (Tenn. 2000) (citing *White v. Lawrence*, 975 S.W.2d 525, 529 (Tenn. 1998); *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995)). Therefore, the burden is on Ms. Burks to prove by a preponderance of the evidence the existence of all five elements, including a duty owed by a defendant to her and a breach of that duty. *Downs ex rel. Downs*, 263 S.W.3d at 819. Accordingly, if Village Roofing and Roof Management affirmatively negate the essential element of duty, that they owed her a duty of care, or show that Ms. Burks, as the nonmoving party, cannot prove the essential element of duty, they are entitled to summary judgment on that issue. *See Martin*, 271 S.W.3d at 83; *see also Hannan*, 270 S.W.3d at 5.

A duty of care is "the legal obligation owed by defendant to plaintiff to conform to a reasonable person standard of care for the protection against unreasonable risks of harm." *Downs ex rel. Downs*, 263 S.W.3d at 819 (citing *McCall*, 913 S.W.2d at 153). A defendant has a duty to exercise reasonable care in its activities in order to prevent unreasonable risks of harm from arising. *Id*. (citing *West v. E. Tenn. Pioneer Oil Co.*, 172 S.W.3d 545, 550 (Tenn. 2005); *Draper v. Westerfield*, 181 S.W.3d 283, 291 (Tenn. 2005); *Doe v. Linder Constr. Co.*, 845 S.W.2d 173, 177 (Tenn. 1992)).

Whether a defendant owes the plaintiff a duty of care is a question of law to be determined by the court. *West*, 172 S.W.3d at 551 (citing *Burroughs v. Magee*, 118 S.W.3d 323, 327 (Tenn. 2003); *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89; *Coln v. City of Savannah*, 966 S.W.2d 34, 39 (Tenn. 1998)). Although duty is a question of law to be determined by the court, the nature of the duty a defendant may owe a plaintiff is dependent upon the resolution of certain factual issues. *Downs ex rel. Downs*, 263 S.W.3d at 821.

The factual basis upon which Ms. Burks contends that Roof Management and Village Roofing owe her a duty of care arises from each defendant's business relationship with Kroger, and the fact that she was a customer shopping at Kroger when she was injured.

KROGER'S DUTY TO ITS CUSTOMERS

Business proprietors such as Kroger are not insurers of their patrons' safety; however, they are required to use due care under all the circumstances. *Blair v. West Town Mall*, 130 S.W.3d 761, 764 (Tenn. 2004) (citing *Martin v. Washmaster Auto Ctr., U.S.A*, 946 S.W.2d 314, 318 (Tenn. Ct. App. 1996)). "Liability in premises liability cases stems from superior knowledge of the condition of the premises." *Id*. (quoting *McCormick v. Waters*, 594 S.W.2d 385, 387 (Tenn. 1980)). For a

plaintiff to hold an owner or operator of a premises liable for negligence in allowing a dangerous or defective condition to exist on its premises, the plaintiff must prove, in addition to the elements of negligence, that: 1) the condition was caused or created by the owner, operator, or his agent, or 2) if the condition was created by someone other than the owner, operator, or his agent, that the owner or operator had actual or constructive notice that the condition existed prior to the accident. *Id.* (citing *Martin*, 946 S.W.2d at 318). Constructive notice can be established by proof that the dangerous or defective condition existed for such a length of time that the defendant, in the exercise of reasonable care, should have become aware of the condition. *Id.* (citing *Simmons v. Sears, Roebuck & Co.*, 713 S.W.2d 640, 641 (Tenn. 1986)). Whether Kroger had notice of the dangerous or defective condition is not before us; nevertheless, we take note of the fact that the manager of the store testified that the store experienced leaks repeatedly during the months and weeks prior to Ms. Burks' fall, that as many as forty (40) leaks occurred at a time following a rain, and that she (the manager) repeatedly notified Kroger's Engineering Department of the recurring and extensive problems.

### UNDERTAKING TO RENDER SERVICES NECESSARY FOR THE PROTECTION OF OTHERS

The fact that Kroger, as the owner or operator of the premises, owed a duty of due care to its customers does not, without more, impose a duty on Roof Management or Village Roofing to Kroger's customers. Moreover, the fact that Kroger, Village Roofing, and Roof Management each had actual or constructive knowledge of extensive roof problems and numerous leaks that were recurring during the relevant period prior to Ms. Burks' fall does not impose a duty on Roof Management or Village Roofing to Ms. Burks. Village Roofing and/or Roof Management may, however, have assumed a duty, which Kroger owed to its customers, and Ms. Burks in particular, by agreeing to render certain services at the Madison Street store.[4]

Ms. Burks contends that Roof Management and Village Roofing each owed a duty to her because each of them undertook the responsibility to render services to Kroger that they knew or should have recognized were necessary for the protection of Kroger's customers. This type of duty is stated in the Restatement (Second) of Torts § 324A.[5] The relevant provision states:

> One who undertakes . . . to render services to another which he should recognize as
> necessary for the protection of a third person . . . , is subject to liability to the third

---

[4] Kroger does not contest the fact that it owed Ms. Burks a duty of care to provide a reasonably safe environment for her to shop, including, without limitation, a duty to maintain the floor in a reasonably safe condition for shoppers such as Ms. Burks.

[5] Though the Supreme Court has not expressly adopted § 324A of the Restatement, the provision has been extensively cited and relied upon in cases addressing the liability of a person for a breach of the assumed duty of reasonable care, and, therefore, we find the provision applicable in this case. *See Barron v. Emerson Russell Maintenance Co.*, No. W2008-01409-COA-R3-CV, 2009 WL 2340990, at *8 n.5 (Tenn. Ct. App. July 30, 2009) (citing *Biscan v. Brown*, 160 S.W.2d 462, 483 (Tenn. 1994); *Speaker v. Cates Co.*, 879 S.W.2d 811, 813 (Tenn. 1994); *Collins v. Arnold*, No. M2004-02513-COA-R3-CV, 2007 WL 4146025, at * 14 (Tenn. Ct. App. Nov. 20, 2007) perm. app. denied (Tenn. Apr. 14, 2008)).

person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

> (a) his failure to exercise reasonable care increases the risk of such harm, or
> (b) he has undertaken to perform a duty owed by the other to the third person, or
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Restatement (Second) of Torts § 324A (1965)[6]; *see also Marr v. Montgomery Elevator Co.*, 922 S.W.526, 529 (Tenn. Ct. App. 1995) (citing *Nidiffer v. Clinchfield Railroad Co.*, 600 S.W.2d 242 (Tenn. Ct. App. 1980); *Gaines v. Excel Industries, Inc.*, 667 F. Supp. 569 (M.D. Tenn. 1987)).

## VILLAGE ROOFING

Ms. Burks contends that Village Roofing undertook the duty to render services to Kroger, which Village Roofing knew or should have recognized as being necessary for the protection of Kroger's customers, that it negligently performed those services, and that her injuries were caused by its negligence.

It is undisputed that Village Roofing agreed on at least six occasions to inspect and make repairs to the roof of the Madison Street store to stop recurring leaks. Considering the evidence in the light most favorable to the nonmoving party, Ms. Burks, *see Stovall*, 113 S.W.3d at 721; *Godfrey*, 90 S.W.3d at 695, it is apparent that Village Roofing made repairs to the roof and the repairs were made, *inter alia*, for the safety of persons walking inside the store, including Kroger's customers. The facts in the record are also sufficient to establish, for purposes of summary judgment, that it was reasonably foreseeable that customers may be exposed to injury if Village Roofing negligently inspected or repaired or negligently failed to make the necessary repairs it assumed the duty to make. However, there is no evidence in the record to support a finding that Village Roofing had a continuing duty to re-inspect and make other or additional repairs when leaks subsequently occurred that did not pertain to and did not result from repairs Village Roofing made or agreed to make. Stated another way, the fact Village Roofing was authorized to and agreed to make modest repairs deemed appropriate to remedy certain leaks existing on a given day does not establish that

---

[6]An illustration provided in the Restatement reads:

A operates a grocery store. An electric light hanging over one of the aisles of the store becomes defective, and A calls B Electric Company to repair it. B Company sends a workman, who repairs the light, but leaves the fixture so insecurely attached that it falls upon and injures C, a customer in the store who is walking down the aisle. B Company is subject to liability to C.

Restatement (Second) of Torts § 324A ill. 1.

it was authorized to make extensive repairs needed to remedy the recurring problem at the Madison Street store.

We believe that material factual disputes exist concerning the scope and extent of repairs Village Roofing was authorized to make, and which it agreed to make. We also believe that material factual disputes exist concerning whether Village Roofing was asked to repair and agreed to repair the leak that caused Ms. Burks to fall. Village Roofing presented evidence upon which the trier of fact may find that it was not authorized to make the extensive repairs needed to remedy all roof leaks for the protection of Ms. Burks and other customers at Kroger. Village Roofing presented evidence to support a finding that it was only authorized to make repairs that were not extensive; thus, it was not responsible for remedying all hazards presented by an obviously deficient and frequently leaking roof. Thus, Village Roofing insists it only assumed a duty to inspect and to make certain authorized repairs and that it did not assume a duty to remedy any and all deficiencies with Kroger's roof, nor make repairs that it was not authorized to make. Conversely, Ms. Burks presented evidence which the trier of fact may find sufficient to conclude that Village Roofing assumed the duty owed by Kroger to inspect the roof and make repairs necessary for the protection of Kroger's customers to remove a dangerous or defective condition known to exist on its premises, one of which being the leak that caused her to fall.

As we noted previously, whether a defendant assumed a duty of care to a plaintiff is a question of law for the court to decide; however, the determination of whether a defendant may owe a duty to a plaintiff in a particular case is often dependent upon the resolution of disputed facts. *See Downs ex rel. Downs*, 263 S.W.3d at 820-21. The determination of the scope and extent of Village Roofing's duty requires the resolution of disputed facts that are material to the issue of Village Roofing's duty. To determine whether Village Roofing owed a duty of care to Ms. Burks, the finder of fact must determine whether the scope of Village Roofing's duty included making the repairs to the leak that caused Ms. Burks to fall. Because genuine issues of material fact relevant to whether Village Roofing owed a duty to Ms. Burks exist, summary judgment on the issue of duty is not appropriate. *See id.* at 821.

The trial court also held that even if Village Roofing had breached a duty of care owed to Ms. Burks, its actions were not the proximate or legal cause of her injuries. The trial court's conclusion appears to be based in significant part on the trial court's determination that the "[r]esponsibility to warn Plaintiff or other customers of leaks or puddles on the Kroger premises [was] solely that of Kroger." Ms. Burks presented evidence to establish that she was injured as a consequence of Village Roofing's negligent repairs and/or its negligence in failing to make the necessary repairs. Village Roofing insists it was not negligent and that Ms. Burks was not injured as a result of its acts or omissions. Whether the breach proximately caused or contributed to the injury are generally questions decided by the trier of fact. *Kelley v. Johnson*, 796 S.W.2d 155, 157 (Tenn. Ct. App. 1990) (citing *Frady v. Smith*, 519 S.W.2d 584, 586 (Tenn. 1974); *Senters v. Tull*, 640 S.W.2d 579, 582 (Tenn. Ct. App. 1982)). "These questions become questions of law only when the facts and inferences drawn from the facts permit reasonable persons to reach only one conclusion." *Id.* (citing *Evridge v. American Honda Motor Co.*, 685 S.W.2d 632, 635 (Tenn. 1985); *Haga v. Blanc & West Lumber Co.*, 666 S.W.2d 61, 65 (Tenn. 1984)). The record before us demonstrates that Ms. Burks

fell between the checkout registers and the produce section of the Kroger store in the general vicinity of the front of the store and that Village Roofing inspected and made or attempted to make repairs to the roof above this area on six occasions prior to Ms. Burks' fall.[7] These facts among others create a genuine dispute concerning whether Village Roofing negligently failed to make the needed repairs and whether Ms. Burks' injuries were a consequence of Village Roofing's negligent acts or omissions. For these reasons, summary judgment on the issue of causation is not appropriate.

<u>ROOF MANAGEMENT</u>

Ms. Burks and Kroger contend that the trial court erred in granting Roof Management summary judgment on the issues of duty and causation. Ms. Burks and Kroger each contend that Roof Management undertook the duty to render services to Kroger, which it knew or should have recognized as being necessary for the protection of Kroger's customers, that it negligently performed those services, and that Ms. Burks' injuries were caused by its negligence.

In its motion, Roof Management contended it was entitled to summary judgment because it had no direct involvement in the roof repairs, it did not oversee the roof repairs made by Village Roofing, it had no control over the roof repairs made by Village Roofing, and it had no firsthand knowledge of the roof repairs made by Village Roofing. Ms. Burks and Kroger, however, contend that Roof Management owed a duty of care to Ms. Burks as a customer of Kroger on the same legal principle as that owed by Village Roofing, which is set forth in section 324 of the Restatement (Second) of Torts. Therefore, we will examine whether Roof Management undertook to render services to Kroger, which it should have recognized as necessary for the protection of a third person.

For purposes of summary judgment, we must examine the facts in the light most favorable to Ms. Burks and Kroger, as the non-moving parties. *See Stovall*, 113 S.W.3d at 721; *Godfrey*, 90 S.W.3d at 695. If there are disputes of material fact, then summary judgment is not appropriate. *See* Tenn. R. Civ. P. 56.04.

Roof Management served as Kroger's roofing consultant and its facilitator of roof repairs at all times material to this action. It is undisputed that Roof Management was hired to assist Kroger to fulfill Kroger's duty to its customers, its employees, and vendors by not allowing a dangerous or defective condition to exist on its premises that posed an obvious hazard to persons in the store, one of which was leaks from the roof. The role of Roof Management in this endeavor was an important one due to the fact that Roof Management was not only the "roofing consultant" for Kroger; it was also responsible for facilitating repairs to remedy roof leaks at the Madison Street store. Reviewing the facts in the light most favorable to Ms. Burks and Kroger, it is evident that Kroger relied on Roof Management for consultation and advice to prevent or remedy leaks that may pose hazards to its customers.

---

[7] This is corroborated by the deposition testimony of several witnesses and the Leak Repair Notice faxed from Roof Management to Village Roofing stated the following: "Leak Location: <u>Several Leaks Across Front, Over Check-Out Lanes</u>."

In deciding whether a duty was owed to act for the protection of a third party, the court must consider "whether the plaintiff's injuries and the manner in which they occurred were reasonably foreseeable." *Biscan v. Brown*, 160 S.W.3d 462, 479 (Tenn. 2005). "[A] risk is foreseeable if a reasonable person could foresee the probability of its occurrence or if the person was on notice that the likelihood of danger to the party to whom is owed a duty is probable." *West*, 172 S.W.3d at 551 (quoting *Linder Const. Co.*, 845 S.W.2d at 178). We find that is was foreseeable that Kroger's customers would be at risk from hazards resulting from unsafe roof conditions should Roof Management fail to properly consult and advise Kroger, or fail to facilitate needed repairs as and when authorized to do so by Kroger. Based upon the evidence in the record, we have, therefore, concluded that it was inappropriate for the trial court to conclude that Roof Management did not owe a duty to Ms. Burks as a Kroger customer.

As was the case with Village Roofing, to determine whether Roof Management owed a duty of care to Ms. Burks, the finder of fact must determine whether the scope of its duty included consulting Kroger and/or facilitating repairs to the leak that caused Ms. Burks to fall. *See Downs ex rel. Downs*, 263 S.W.3d at 821. Because genuine issues of material fact relevant to whether Roof Management owed a duty to Ms. Burks exist, summary judgment on the issue of duty was not appropriate. *See id*.

The trial court also held that even if Roof Management owed a duty to Ms. Burks, its actions were not the legal or proximate cause of Ms. Burks' injuries. Whether a defendant breached its duty and whether that breach proximately caused the injury are generally questions decided by the trier of fact. *Kelley*, 796 S.W.2d at 157 (citing *Frady*, 519 S.W.2d at 586; *Senters*, 640 S.W.2d at 582). "These questions become questions of law only when the facts and inferences drawn from the facts permit reasonable persons to reach only one conclusion." *Id*. (citing *Evridge*, 685 S.W.2d at 635; *Haga*, 666 S.W.2d at 65).

The record demonstrates that Roof Management knew that the condition of the roof at the Clarksville store was poor. This is evident from the fact that Roof Management recommended that Kroger replace the roof "in 2005," however, it is disputed whether Roof Management informed Kroger of the urgency in replacing the roof, i.e., whether the roof needed to be replaced immediately or by the end of 2005.[8] Moreover, Roof Management was aware of the repeated repairs that continued following Kroger's refusal or deferral of replacing the roof, as it had facilitated these repairs, which were inadequate to remedy the recurring hazard of water leaks. Further, Roof Management received a written recommendation from Village Roofing on July 18, 2005 that extensive repairs were needed to remedy the recurring leaks; yet, Roof Management took no action on the recommendation other than merely forwarding the invoice to Kroger. We find that these facts, and the inferences to be drawn from the facts, in this case are not such that only one conclusion could be reached. Whether Roof Management's actions constituted a breach of a duty and whether that

---

[8] In his deposition, Mr. McGraw, an employee of Roof Management, testified that he was told by this person in the Engineering Department that Kroger did not have the money to replace the roof at that time and to continue making repairs as needed.

breach proximately caused Ms. Burks' injuries involve questions of fact, which have yet to be resolved. Thus, it was not appropriate to grant Roof Management summary judgment on the issue of causation.[9]

## In Conclusion

The judgment of the trial court granting summary judgment to Village Roofing and Roof Management is reversed, and this matter is remanded for further proceedings consistent with this opinion. Costs of appeal are assessed against Village Roofing and Roof Management.

_____
FRANK G. CLEMENT, JR., JUDGE

_____

[9] Roof Management also contends that the actions of Kroger in disregarding recommendations to replace the roof constitute a superseding intervening cause that relieves it of any liability. The existence of an intervening cause is a question of fact for the jury to decide. *See McClenahan v. Cooley*, 806 S.W.2d 767, 776 (Tenn. 1991).