# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### January 22, 2010 Session

## HARRISON KERR TIGRETT v. JOHN E. LINN, M. D, ET AL.

**Interlocutory Appeal from the Circuit Court for Shelby County**
**No. CT-004155-04     Kay S. Robilio,  Judge**

---

**No.  W2009-00205-COA-R9-CV - Filed March 31, 2010**

---

This is a Tenn. R. App. P.  9 appeal of the denial of a motion for summary judgment in a medical malpractice case.  The trial court denied Appellants/Defendants' motions for summary judgment, finding that the statute of repose, Tenn. Code Ann.§29-26-116(a)(3), was tolled as a result of fraudulent concealment on the part of Appellants/Defendants. Finding that there are material issues of fact in dispute, we affirm the trial court's denial of Appellants' motions for summary judgment.  We, however, vacate any decision that the statute of limitations was tolled as a result of fraudulent concealment.

**Tenn. R. App. P. 9 - Interlocutory Appeal by Permission; Judgment of the Circuit Court Affirmed in Part, Vacated in Part and Remanded**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

Jerry E. Mitchell and Justin N. Joy,  Memphis, Tennessee, for the appellants, John E. Linn, M.D. and Vitreoretinal Foundation, PLLC.

Jerry O'Neal Potter and Jennifer S. Harrison, Memphis, Tennessee, for the appellant, Larry M. Jones. O.D., Individually and d/b/a Center for Visual Independence and/or Monroeville Optometric Center.

J. Houston Gordon, Covington, Tennessee, for the appellee, Harrison Kerr Tigrett.

## OPINION

In early January 2000, Appellee Harrison Kerr Tigrett ("Mr. Tigrett") saw Dr. Larry

M. Jones ("Dr. Jones"), an optometrist practicing in Memphis, to inquire about LASIK corrective eye surgery.[1] On January 5, 2000, Dr. Jones conducted a series of tests, including topographical studies and eye measurements, as a pre-screening process to determine whether Mr. Tigrett was a suitable candidate for the procedure. Dr. John E. Linn ("Dr. Linn") is an ophthalmologist, also practicing in Memphis. After reviewing the pre-operative tests, Dr. Jones opined that Mr. Tigrett was a good candidate for LASIK surgery, and specifically that there was no indication of Keratoconus in these pre-operative studies.[2] Dr. Linn admitted in his deposition that he actually reviewed the topographical studies prior to surgery; and, on January 21, 2000, Dr. Linn performed the LASIK procedure on Mr. Tigrett.

Following routine post-operative evaluations on January 22 and March 3, 2000, Mr. Tigrett's surgery appeared to be successful, and his post-operative course was uneventful until October or November, 2003. At this time, Mr. Tigrett, who had not seen either Dr. Jones or Dr. Linn since the March 3, 2000 appointment, began to experience eye pain, blurred vision, and uncontrollable eye movement. On December 22, 2003, Mr. Tigrett returned to the clinic for treatment of these symptoms. Following evaluation, Dr. Jones and another doctor in his office, Dr. Alyce Miles, informed Mr. Tigrett that he "may be developing Keratoconus," and a plan of treatment was outlined. Mr. Tigrett was told that the surgery had no harmful effect on his vision.

On July 20, 2004, Mr. Tigrett filed a complaint for medical malpractice against Dr. Jones, individually and d/b/a Center for Visual Independence and/or Monroeville Optometric Center, and against Dr. Linn, individually and d/b/a Vitreoretinal Foundation, P.L.L.C. (together "Appellants"). The complaint was based upon alleged acts and omissions of Appellants in the examination, care, surgery, treatment of, and/or concealment of facts from, Mr. Tigrett *vis a vis* the LASIK surgery performed on January 21, 2000.

On September 8, 2004, the Appellants filed a joint answer, denying any negligent act or omission, which would have caused Mr. Tigrett's alleged injuries. The Appellants also specifically denied that the pre-operative studies showed any clinical Keratoconus. Moreover, Dr. Linn affirmatively averred that "the action set out in the Complaint is barred by the . . . statute of repose found at T.C.A. §29-26-116(a)(3)." On February 15, 2006, Dr. Jones filed a motion for summary judgment, in which he first alleged that Mr. Tigrett's claim was barred by the statute of repose. On February 24, 2006, Dr. Linn filed a motion for summary judgment, adopting and incorporating Dr. Jones' memorandum of law filed in

---

[1] LASIK stands for Laser-Assisted *in Situ* Keratomileusis.

[2] Keratoconus is a degenerative disorder of the eye in which structural changes within the cornea cause it to thin and change to a more conical shape than its normal gradual curve.

support of his motion.

Mr. Tigrett filed written opposition to both motions, alleging that the statute of repose was tolled by fraudulent concealment.[3] Mr. Tigrett submitted that the trial court should deny the motions as there were material issues of fact in dispute. Mr. Tigrett asserted that Dr. Linn and Dr. Jones were both aware that he had Keratoconus so as to render him an unsuitable candidate for LASIK surgery. He submitted that the Appellants knew of his condition and concealed it and the effect it had on the success of the surgery from him both before and after the surgery. Mr. Tigrett also provided the affidavit testimony of two experts in support of his position.

On June 30, 2006 Dr. Linn filed a second memorandum of law in support of his motion for summary judgment, asserting that Mr. Tigrett's allegations of fact constituted simple negligence, and not fraudulent concealment, so as to toll the statute of repose. Dr. Linn further argued that a violation of a physician's duty to disclose only constitutes fraudulent concealment if the doctor conceals known facts. On September 12, 2008, in response to Mr. Tigrett's opposition to the motions for summary judgment, Dr. Jones adopted, and relied upon, the factual assertions and legal arguments made by Dr. Linn in his second memorandum in support of the motion.

Appellants' motions for summary judgment were heard by the trial court on September 12, 2008. By letter of September 19, 2008, the trial court informed the parties of its ruling, denying the motions for summary judgment. The court stated its reason for the denial of the motions as follows: "[T]he experts for [Mr. Tigrett] indicate [that the] condition existed such that it could be diagnosed at that time [i.e., prior to the LASIK procedure]." On November 3, 2008, the court entered its order, denying the motions for summary judgment, which Order specifically incorporated the September 19, 2008 letter.

On December 2, 2008, Appellants filed motions and supporting memoranda for an interlocutory appeal pursuant to Tenn. R. App. P. 9. On December 11, 2008, Mr. Tigrett filed his response to Appellants' motion for interlocutory appeal, stating "that an interlocutory appeal concerning whether, under the facts of this case, the statute of repose is tolled due to fraudulent concealment pursuant to T.C.A. §29-26-116(a)(3) is appropriate." On January 23, 2009, the trial court granted the motion for interlocutory appeal. This Court granted the parties' joint application for permission to appeal on March 19, 2008. The sole issue for review is: whether the trial court erred in denying Appellants' motions for summary

---

[3]On June 12, 2006, Mr. Tigrett filed an amended opposition to the Appellants' motion. In his amendment, Mr. Tigrett asserted that the statute of repose is unconstitutional. This court declined to grant interlocutory appeal on this issue and therefore we do not address this argument.

judgment, upon its finding that Appellee had alleged facts sufficient to trigger the fraudulent concealment exception to the statute of repose, Tenn. Code Ann. §29-26-116(a)(3).

A trial court's decision to grant a motion for summary judgment presents a question of law. Our review is therefore de novo with no presumption of correctness afforded to the trial court's determination. **Bain v. Wells,** 936 S.W.2d 618, 622 (Tenn. 1997). "This Court must make a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied." **Mathews Partners, LLC v. Lemme,** No. M2008-01036-COA-R3-CV, 2009 WL 3172134 at \*3 (citing **Hunter v. Brown**, 955 S.W.2d 49, 50-51 (Tenn. 1977)).

When a motion for summary judgment is made, the moving party has the burden of showing that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. The moving party may accomplish this by either: (1) affirmatively negating an essential element of the non-moving party's claim; or (2) showing that the non-moving party will not be able to prove an essential element at trial. **Hannan v. Alltel Publ'g Co**., 270 S.W.3d 1, 8-9 (Tenn. 2008). However, "[i]t is not enough for the moving party to challenge the nonmoving party to 'put up or shutup' or even to cast doubt on a party's ability to prove an element at trial." **Id**. at 8. If, and only if, the moving party successfully demonstrates a non-moving party's inability to prove an essential element at trial, does the burden shift to the non-moving party to create at least a dispute of fact. **Id.** at 7. The non-moving party may accomplish this by: "(1) pointing to evidence establishing material factual disputes that were overlooked or ignored by the moving party; (2) rehabilitating the evidence attacked by the moving party; (3) producing additional evidence establishing the existence of a genuine issue for the trial; or (4) submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P., Rule 56.06." **Martin v. Norfolk Southern Railway. Co.**, 271 S.W.3d 76, 84 (Tenn. 2008)(citations omitted).

When reviewing the evidence, we must determine whether factual disputes exist. In evaluating the trial court's decision to grant summary judgment, we review the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. **Stovall v. Clarke**, 113 S.W.3d 715, 721 (Tenn. 2003). If we find a disputed fact, we must "determine whether the fact is material to the claim or defense upon which summary judgment is predicated and whether the disputed fact creates a genuine issue for trial." **Mathews Partners**, 2009 WL 3172134 at \*3(citing **Byrd**, 847 S.W.2d at 214). "A disputed fact is material if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." **Byrd**, 847 S.W.2d at 215. A genuine issue exists if "a reasonable jury could legitimately resolve the fact in favor of one side or the other." **Id.** "Summary judgment is only appropriate when the facts and legal conclusions drawn from the facts reasonably permit only one conclusion." **Landry v. South Cumberland Amoco, et**

*al.*, No. E2009-01354-COA-R3-CV, 2010 WL 845930, \*3 (Tenn. Ct. App. March 10, 2010)(citing **Carvell v. Bottoms**, 900 S.W.2d 23 (Tenn. 1995).

In the case before us, the Appellants argue that they are entitled to summary judgement because the statute of repose bars Mr. Tigrett's claim. Tenn. Code Ann. §29-26-116(a) provides, in pertinent part:

> (3) In no event shall any such action [i.e., medical malpractice] be brought more than three (3) years after the date on which the negligent act or omission occurred except where there is fraudulent concealment on the part of the defendant, in which case the action shall be commenced within one (1) year after discovery that the cause of action exists.

This statute of repose for medical malpractice actions provides an almost absolute limitation on the time a plaintiff has to file his or her medical malpractice claim. **Calaway v. Schucker**, 193 S.W.3d 509, 515 (Tenn. 2005). The time of discovery of the injury, or the basis for the medical malpractice claim, is not relevant because the statute operates to bar an action based solely upon the date of the act or omission giving rise to the malpractice claim, regardless of when the action accrued. **Id**; *see also* **Braden v. Yoder**, 592 S.W.2d 896, 897 (Tenn. Ct. App. 1979) ("This three-year ceiling is unrelated to the accrual of a cause of action commencing not on discovery but rather at the date of the allegedly negligent act."). Despite the harsh result that often ensues under this statute, our Supreme Court has held that, in enacting Tenn. Code Ann. §29-26-116(a)(3), our Legislature intended "to place an absolute three-year bar beyond which no medical malpractice right of action may survive." **Mills v. Wong**, 155 S.W.3d 916, 920 (Tenn. 2005). Because of the legislative intent to provide certainty as to the length of time a healthcare provider may be subject to potential liability, **Cronin v. Howe**, 906 S.W.2d 910, 913 (Tenn. 1995), the exception to the strict time limit imposed by the statute of repose is, necessarily, narrow and specific.

Mr. Tigrettt contends however, that his claim is not barred because the Appellants fraudulently concealed the facts giving rise to his claim, both before and after the surgery. Specifically, Mr. Tigrettt alleges that both Dr. Linn and Dr. Jones knew, based on both his pre-operative tests and post-operative tests, that he suffered from Keratoconus and was therefore not a candidate for the surgery, and failed to disclose this fact, despite their duty to do so, either before or after the surgery. Fraudulent concealment is an exception to the three year statute of repose. **Shadrick v. Coker**, 963 S.W.2d 726, 736 (Tenn. 1998). In order to utilize the fraudulent concealment exception, a plaintiff must prove:

> (1) the health care provider took affirmative action to conceal

the wrongdoing or remained silent and failed to disclose material facts despite a duty to do so, (2) the plaintiff could not have discovered the wrong despite exercising reasonable care and diligence, (3) the health care provider knew of facts giving rise to the cause of action and, (4) a concealment, which may consist of the defendant withholding material information, making use of some device to mislead the plaintiff, or simply remaining silent and failing to disclose material facts when there was a duty to speak.

*Id.* at 736. Tennessee courts have clearly held that proof of *actual* knowledge of facts giving rise to the cause of action is required to establish fraudulent concealment. *See, e.g., Pero's Steak & Spaghetti House v. Lee*, 90 S.W.3d 614, 625 (Tenn. 2005). However, while a trier of fact may not simply assume that a person had actual knowledge, it may infer knowledge from the proof presented. *Shadrick*, 963 S.W.2d at 737 (holding that evidence of knowledge may be inferred); *see also Benton v. Snyder*, 825 S.W.2d 409, 414-415 (Tenn. 1992)(finding sufficient circumstantial evidence to allow a jury to infer fraudulent concealment).

Accordingly, to be entitled to summary judgment, the Appellants must demonstrate that Mr. Tigrett will not be able to prove one of the four required elements of fraudulent concealment. In their respective motions, the Appellants both assert that Mr. Tigrett will not be able to show that they had actual knowledge of his condition. Dr. Linn and Dr. Jones both assert that they did not know that Mr. Tigrettt had Keratoconus until December 2003. Assuming *arguendo* that these statements demonstrate that Mr. Tigrett will not be able to prove actual knowledge, an essential element of fraudulent concealment, and that therefore the burden shifts to Mr. Tigrett, we will review the record to determine if Mr. Tigrett has created a dispute of fact. It is not incumbent on Mr. Tigrett to show, at this point, that Dr. Linn and/or Dr. Jones had actual knowledge. He need only show that there is a dispute of fact as to their actual knowledge.

In response to the Appellants' motions for summary judgment, Mr. Tigrett submitted affidavits from two experts, Dr. Rolando Toyos ("Dr. Toyos") and Dr. Paul James Harton ("Dr. Harton"). Dr. Toyos opined that Mr. Tigrett's pre-operative reports show that he had a preexisting condition of Keratoconus and should not have had the surgery. Further, Dr. Toyos opined that Dr. Linn and Dr. Jones had a duty to disclose this to Mr. Tigrett and failure to do so would be a breach of the standard of care.

As to Dr. Jones, Dr. Toyos opined that Dr. Jones failed to properly detect and record that Mr. Tigrett was not a candidate for the surgery, and was negligent in not disclosing the

medical condition and that he was not a candidate for the surgery to Mr. Tigrett. Dr. Toyos opined that either Dr. Jones failed to (1) properly read the test results, (2) inform the patient of the test results, (3) test further, (4) get someone qualified to perform and read the tests, *or* (5) request further testing. Further, Dr. Toyos opined that Dr. Jones violated the standard of care by not disclosing the condition to Mr. Tigrett either before or after the surgery, and by misleading Mr. Tigrett by telling him the surgery had no harmful effect on his vision as the suregery was a substantial cause of his accelerated and exacerbated condition.

As to Dr. Linn, Dr. Toyos opined that either he did not review the pre-operative reports or negligently did so. Dr. Toyos noted that the pre-operative reports clearly show Keratoconus and that Dr. Linn admitted reviewing the reports. Dr. Toyos also opined that Dr. Linn was negligent in not disclosing the condition to Mr. Tigrett when it was obvious from the reports, and that Dr. Linn violated the standard of care in not disclosing "the true facts" after the surgery and further testing, and in not disclosing that the condition would be much worse as a result of inappropriate surgery. Dr. Harton opined similarly in his affidavit.

After reviewing the record, we find that Mr. Tigrett submitted sufficient evidence to create an issue of fact as to the knowledge of both the Appellants. Two experts have opined that the pre-operative reports clearly show that Mr. Tigrett had Keratoconus and that any doctor complying with the standard of care should have known of his condition. The Appellants both admit reading the pre-operative reports, and each contends that he was complying with the applicable standard of care. Yet, each one submits that he did not know that Mr. Tigrett had Keratoconus. It appears obvious to this Court that there is a question of fact as to the knowledge each doctor possessed of Mr. Tigrett's condition prior to surgery. To allow a doctor to merely claim, "I did not know," and be entitled to summary judgment, despite testimony from other experts that the condition was clear and obvious in the medical records, would effectively bar all claims of fraudulent concealment. This is especially so when the defendant doctor contends that he was acting in accordance with the standard of care, and the opposing expert opines that, if the doctor was complying with the standard of care, he would have known.

Appellants argue that the expert affidavits do not create a question of fact. Specifically, they cite to the portions of the affidavits which state that they negligently failed to detect and properly record that Mr. Tigrett was not an appropriate candidate for the surgery. We agree that this statement only indicates negligence and would not rise to the level of actual knowledge and fraudulent concealment. However, other statements in the affidavits indicate that the doctors had actual knowledge and withheld facts that they had a duty to disclose. For example, Dr. Toyos opined that Dr. Jones either failed to properly read the test showing that Mr. Tigrett had keratoconus *or* failed to inform Mr. Tigrett of this condition. The first allegation only amounts to negligence, however, the later is clearly

fraudulent concealment. Further, Dr. Toyos opined that Dr. Jones failed to disclose the condition after the surgery, and misled the patient as to the success of the surgery and the effects it would likely have on his vision. As to Dr. Linn, Dr. Toyos' opinions indicate that he may only be guilty of negligence prior to surgery, but that he failed to disclose the true facts after the surgery. We recognize that these affidavits are not artfully drafted, however for purposes of summary judgment we review the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. ***Stovall v. Clarke***, 113 S.W.3d 715, 721 (Tenn. 2003). After doing so, it appears to this Court that the expert affidavits submitted by Mr. Tigrett create a question of fact as to the knowledge of the Appellants.

Even assuming *arguendo* that Dr. Linn and Dr. Jones did not know of Mr. Tigrett's condition prior to surgery, there is at least a question of fact as to their knowledge and possible fraudulent concealment after the surgery. Dr. Toyos opined that Dr. Jones misled Mr. Tigrett in informing him that the surgery was successful, and further misled him in 2003 by telling him that the surgery had no harmful effect on his vision. Further, Dr. Toyos opined that Dr. Jones violated his duty to disclose to the patient, after surgery, the negligent acts that had occurred prior to surgery. As to Dr. Linn, Dr. Toyos opined that he failed to disclose after the surgery, the true facts of Mr. Tigrett's condition, and the likelihood that his vision would worsen. From Dr. Toyos' affidavit, it appears that he is of the opinion that both Dr. Jones and Dr. Linn knew of Mr. Tigrett's condition after the surgery and the likelihood that the surgery would cause his vision to worsen; yet, in violation of the standard of care, they did not disclose these facts to Mr. Tigrett. Assuming that Dr. Linn and Dr. Jones did not know of the condition prior to the surgery, upon learning of the condition after the surgery they would have a duty to disclose the condition and its effects on the success of the surgery to Mr. Tigrett. By not doing so, they would have concealed facts giving rise to a cause of action, of which they were aware.

Dr. Linn further contends that there is no indication that he had an opportunity to gain knowledge of Mr. Tigrett's condition after the surgery. After reviewing the record, we find that there is a dispute of fact as to this contention. First, Mr. Tigrett asserts that he saw Dr. Linn after the surgery, and the medical records before and after the surgery, according to the experts, indicate Mr. Tigrett had Keratoconus. Also, Dr. Toyos' affidavit contradicts Dr. Linn's assertion. Dr. Linn further asserts that the medical records do not show a diagnosis before the surgery. However, our Supreme Court has previously held that the absence of documentation may actually allow a jury to infer, when combined with other facts, fraudulent concealment. ***Benton v. Synder***, 825 S.W.2d 409, 415 (Tenn. 1992).

Additionally, Dr. Linn and Dr. Jones attempt to distinguish this case from other medical malpractice and fraudulent concealment cases. (*Citing **Shadrick v. Coker***, 963

S.W.2d 726 (Tenn. 1998); **Benton v. Snyder**, 825 S.W.2d 409, 411 (Tenn. 1992); **Green v. Sacks**, 56 S.W.3d 513 (Tenn. Ct. App. 2001); **Merlo v. Maxwell**, No. 01A01-9811-CV-00610, 1999 WL 820728 (Tenn. Ct. App. July 14, 1999)). Specifically they assert that these cases involve fraudulent concealment of known facts about medical treatment in the context of informed consent. However, fraudulent concealment of known facts and lack of informed consent is exactly what Mr. Tigrett has alleged. In his complaint, Mr. Tigrett alleges that his condition was known and at no time was he informed of his condition prior to surgery or its possible effects on the outcome of his surgery. The other cases do differ slightly from the case before us in that they involved fraudulent concealment of factual aspects of the procedure, i.e. what type of implants would be used, **Merlo,** 1999 WL 820728, at * 1; what type of procedure would be performed, **Benton**, 825 S.W.2d at 411; and whether the implants were permanent, **Shadrick**, 963 S.W.2d at 736. However, this case involves allegations of fraudulent concealment of the patient's true condition. These differences are immaterial as the elements and analysis of fraudulent concealment remain the same. Moreover, Mr. Tigrett made additional allegations in his complaint besides the allegation of fraudulent concealment as it relates to informed consent prior to his surgery. He alleges that the defendants withheld information about his condition after the surgery.

**Green v. Sacks**, 56 S.W.3d 513 (Tenn. Ct. App. 2001), which the Appellants attempt to distinguish, is actually comparable to the case before us. In **Green** the defendant doctor performed a stomach surgery on the plaintiff. **Id.** at 516. During this surgery, he was forced to change his plan of procedure slightly due to the condition of the plaintiff's stomach as a result of a previous surgery. **Id.** The defendant doctor did not know of the condition prior to surgery, but was aware post surgery. **Id.** However, the defendant doctor did not inform the patient of the condition, the changes to the procedure, or the possible effects it would have on her in the future. **Id.** Following complications, the plaintiff filed suit against the doctor approximately five years after the surgery. **Id.** The defendant doctor filed a motion for summary judgement asserting that the statute of repose barred the action, and the trial court granted his motion. **Id.** at 517. On appeal, this Court reversed the trial court, finding that there was a question of fact for the jury as to whether the defendant doctor's failure to inform the plaintiff amounted to fraudulent concealment. **Id.** at 522. In making that decision, this Court noted that the plaintiff had provided an affidavit from an expert stating that the defendant doctor had a duty to inform the patient of the changes and by not doing so he violated his standard of care. **Id.** at 521. Further, this Court noted that "[f]or a physician's failure to disclose information to constitute fraudulent concealment for the purposes of tolling the statute of repose, the failure to disclose should also be, . . . below the 'recognized standard of acceptable professional practice in the profession and specialty thereof'" **Id.** at 520 (citing Tenn. Code Ann. § 29-26-115(a)(1)).

As in **Green**, we have before us two doctors who may have known of a patient's

condition after surgery and yet failed to inform the patient of this condition and the effects it would have on the success of the surgery. Also, as in **Green**, we have the affidavits from experts stating that the doctor had a duty to inform the patient of this condition, and the possible effects of the surgery and by not informing the patient, the doctor violated the standard of care. The only difference between this case and **Green** is the element of knowledge. In **Green**, it was admitted that the doctor was not aware of the condition prior to surgery, but it was admitted that he had knowledge after the surgery. In the case before us, it is still disputed when the Appellants had knowledge of Mr. Tigrett's condition. However, Mr. Tigrett has submitted sufficient proof to overcome a motion for summary judgment on the issue of knowledge. He need not, for purposes of summary judgment, prove actual knowledge, but must only create a question of fact as to the actual knowledge of the doctors. He has met this burden. **Martin v. Norfolk Southern Railway. Co.**, 271 S.W.3d 76, 84 (Tenn. 2008)(citations omitted).

The Appellants assert that this case is one of improper or mis-diagnosis. They are correct in their assertion that for purposes of tolling the statute of repose, "the failure to correctly diagnose an ailment cannot be the basis for a fraudulent concealment claim unless the defendant had knowledge of the correct diagnosis." **Murphy v. Lakeside Med. Ctr., Inc.,** No. E2006-01721-COA-R3-CV, 2007 WL 906760 (Tenn. Ct. App. March 26, 2007). One cannot conceal what one does not know. **Mayers v. Miller Med. Group**, No. 01-A-01-9802-CV-00101, 1998 WL 848095, at *4 (Tenn. Ct. App. December 8, 1998). "[A]n honest mistake made by a physician in diagnosing the cause of a patient's infirmity standing alone, is not evidence of fraudulent concealment." **Ray v. Scheibert**, 484 S.W.2d 63, 72 (Tenn. Ct. App. 1972). In **Ray**, this court affirmed the trial court's decision to grant a directed verdict to the defendant doctor, after finding that no evidence was presented *at trial* that the defendant's action were anything but an honest mistake. **Id.** (emphasis added). In this case, however, there is sufficient evidence for purposes of summary judgment to create a question of fact as to what the Appellants knew and when they knew it. The question as to whether either of the Appellants knew of Mr. Tigrett's condition either before or after the surgery, or whether the Appellants simply mis-diagnosed, even if negligently, remains. At trial, Mr. Tigrett will bear the burden of proving that Dr. Jones and Dr. Linn each had actual knowledge of his condition and each acted to conceal it. **Shadrick v. Coker**, 963 S.W.2d at 736. For purposes of summary judgment, however, Mr. Tigrett need only create a question of fact.

The Appellants argue that to allow Mr. Tigrett to proceed without concrete evidence of the actual knowledge of Dr. Linn and Dr. Jones would undermine the legislative intent behind the statute of repose. We find this argument to be without merit. There are numerous cases in this state wherein this Court and our Supreme Court allowed a plaintiff to proceed to trial despite the possibility that the action would be barred by the statute of repose if the

plaintiff did not prove fraudulent concealment at trial. *See, e.g., **Shadrick v. Coker***, 963 S.W.2d 726, 736-37 (Tenn. 1998)(finding that material issues of fact remained as to fraudulent concealment and a jury could find that there had been fraudulent concealment which would toll the statute of repose); ***Benton v. Snyder***, 825 S.W.2d 409, 414 (Tenn. 1992)(finding material evidence sufficient to create a jury issue on the elements of knowledge and concealment); ***Green v. Sacks***, 56 S.W.3d 513 (Tenn. Ct. App. 2001). Additionally, to bar the plaintiff's claim at this juncture due to the statute of repose, despite the questions of fact which remain, would in effect undermine the fraudulent concealment exception provided by the legislature.

We find that Mr. Tigrett has created issues of fact as to the knowledge of the Appellants. Therefore we affirm the trial court's denial of the Appellants' motions for summary judgment. This holding, however, is limited and does not affirm any finding the trial court may have made that Dr. Linn and Dr. Jones did actually fraudulently conceal facts giving rise to a cause of action, and any such decision is vacated. Further, we reiterate, that Mr. Tigrett must prove *actual* knowledge of the condition in order to proceed under fraudulent concealment and it is not enough for Mr. Tigrett to show that Dr. Linn or Dr. Jones should have known. However, this actual knowledge may be inferred from the facts and circumstances of this case. ***Shadrick***, 963 S.W.2d at 737. Costs of this appeal are taxed against the Appellants, Larry M. Jones, individually and d/b/a Center for Visual Independence and/or Visual Independence and/or Monroeville Optometric Center and John E. Linn individually and d/b/a Vitreoretinal Foundation, PLLC and their sureties.

_____

J. STEVEN STAFFORD, JUDGE