# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### June 28, 2011 Session

## STATE OF TENNESSEE, ET AL.
## v.
## CENTURION INDUSTRIA e COMERCIO de CIGARROS, L.T.D. A., ET AL.
## AND
## TANTUS TOBACCO, L.L.C.
## v.
## STATE OF TENNESSEE, ET AL.

**Direct Appeal from the Circuit Court for Davidson County**
**No. 05C2314     Barbara N. Haynes, Judge**

---

**No. M2010-02602-COA-R3-CV - Filed July 20, 2011**

---

This is an appeal from the trial court's grant of summary judgment to the Appellee. After reviewing the record, we conclude that the order granting summary judgment fails to comply with Tennessee Rule of Civil Procedure 56.04, as it does not "state the legal grounds upon which the court denies or grants the motion." Consequently, this Court cannot proceed with our review and must vacate the judgment of the trial court.  Vacated and remanded.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Circuit Court Vacated and Remanded**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Robert E. Cooper, Jr., Attorney General and Reporter; and Joseph F. Whalen, Associate Solicitor General; Stephen R. Butler, Senior Counsel; Rebekah A. Baker, Assistant Attorney General, for appellant, State of Tennessee.

Michael Hirn, Gregory F. Coleman, and G. George Bertram, Russell Springs, Kentucky, for the appellee, Tantus Tobacco, L.L.C.

Paul W. Ambrosius, Nashville, Tennessee, for the Defendants, Centurion Industria e Comercio de Cigarros, L.T.D. A., Sudamax Industria e Comercio de Cigarros L T.D. A., and Samurai Industria e Comercio de Cigarros, L.T.D. A.

**OPINION**

On November 23, 1998, the State of Tennessee ("State," or "Appellant"), along with forty-five other states, the District of Columbia, and four U.S. territories, entered into a Master Settlement Agreement ("MSA") with several major tobacco companies. Under the MSA, the participating manufacturers agreed to make substantial monetary payments to the State of Tennessee, in perpetuity, for cigarettes sold in the State. In addition to monetary relief, the MSA provides the State with various types of injunctive relief, which are designed to discourage and prevent smoking, especially in youth.

On May 26, 1999, Tennessee enacted the Escrow Fund Act, Tennessee Code Annotated Section 47-31-101, *et seq.* (the "Act"). The Act is based on the Model Statute contained in the MSA. The Act requires tobacco product manufacturers who sell cigarettes in Tennessee, whether directly or through a distributor, retailer or similar intermediary, to either join the MSA, or to make annual escrow deposits based upon the number of cigarettes sold in Tennessee. Tenn. Code Ann. §§ 47-31-103, 102(1), and 103(a)(2)(A). The escrow deposit must be placed in a qualified escrow fund, as defined by Tennessee Code Annotated Section 47-31-102(6), by April 15 of the year following the applicable sales year. Tenn. Code Ann. § 47-31-103(a)(2)(A). The Act further requires tobacco product manufacturers, who do not join the MSA, to certify annually to the Attorney General that they have complied with the escrow requirements. Tenn. Code Ann. § 47-31-103(a)(3). If a non-participating manufacturer fails to make the required escrow deposit, the Attorney General may bring a civil action on behalf of the State. Tenn. Code Ann. § 47-31-103(a)(3).

Prior to 2004, the Act contained language that allowed a non-participating manufacturer to obtain the release of portions of their escrow deposits under certain circumstances. Tenn. Code Ann. § 47-31-103(a)(2)(B)(ii) (1999).[1] As of April 20, 2004, the statute was amended to remove the "allocated share" language. The current language allows a non-participating manufacturer to obtain the release of escrow funds to the extent that the escrow deposits are greater than the hypothetical MSA payment (based upon the number of

---

[1] Before the 2004 amendment, Tennessee Code Annotated § 47-31-103(a)(2)(B)(ii) (1999) read, in relevant part, as follows:

> To the extent that a tobacco product manufacturer establishes that the amount it was required to place into escrow in a particular year was greater than the state's allocable share of the total payment that such manufacturer would have been required to make under the Master Settlement Agreement...had it been a participating manufacturer, the excess shall be released from escrow and revert back to such tobacco product manufacturer.

cigarette's sold in the State), rather than to the extent that the escrow deposits are greater than the state's allocable share of the manufacturer's hypothetical MSA payment. Tenn. Code Ann. § 47-31-103(a)(2)(B)(ii).[2] As the statute currently reads, after twenty-five years, the money in escrow is released to the tobacco product manufacturer. Tenn. Code Ann. §47-31-103(a)(2)(B)(iii).

Tantus Tobacco, L.L.C. ("Tantus," or "Appellee") and Sudamax Industria e Comercio de Cigarros, L.T.D. A. ("Sudamax") began a business relationship sometime in 2002. Under their agreement, Sudamax would manufacture the Berkley brand cigarettes in Brazil, and would sell these cigarettes to Tantus for distribution in the United States. Tantus suggested that Sudamax create an entity to serve as middleman so that Sudamax would not have to deal directly with Tantus. As a result, Samurai Industria e Comercio de Cigarros, L.T.D.A. ("Samurai") was formed. Samurai is essentially the same company as Sudamax; the record indicates that Samurai did not receive any monies in its role as middleman. Centurion Industria e Comercio de Cigarros, L.T.D. A. ("Centurion") was also created to serve as a middleman. Both Samurai and Centurion are controlled by Sudamax. One of the purposes for creating these middleman entities was to prevent Sudamax from having difficulty with the escrow requirements of the states where its Berkley cigarettes were distributed. According to the record, Tantus suggested the creation of Samurai and Centurion so that Sudamax would not be removed from state directories of approved tobacco product manufacturers should there be any escrow default. Another reason for the creation of Samurai and Ceturion was to prevent states from having sufficient information to aggregate all sales of the manufacturer when calculating the escrow obligation. This resulted in the escrow accounts for the Berkley brand cigarettes being opened in the name of Samurai rather than Sudamax.

The agreement between Tantus and Sudamax resulted in the sale of Berkley brand cigarettes in Tennessee as early as 2003. Anticipating the escrow deposit that would occur, Samurai sent a letter to the Tennessee Attorney General's Office, requesting the release of

_____

[2] Following the 2004 amendment, Tennessee Code Annotated § 47-31-103(a)(2)(B)(ii) currently reads, in relevant part, as follows:

> To the extent that a tobacco product manufacturer establishes that the amount it was required to place into escrow on account of units sold in the state in a particular year was greater than the master settlement agreement payments, as determined pursuant to § IX(i) of the master settlement agreement including after final determination of all adjustments, that such manufacturer would have been required to make on account of such units sold had it been a participating manufacturer, the excess shall be released from escrow and revert back to such tobacco product manufacturer....

$205,017.25 from its qualified escrow fund, effective April 13, 2004. Pursuant to its verbal agreement with Sudamax, Tantus deposited $253,505.18 into Samurai's escrow account for Tennessee on April 14, 2004, which amount was based upon the number of Berkley brand cigarettes sold in Tennessee in 2003. By the time of the escrow deposits, the State had developed concerns about the release of money from Samurai's escrow account, based upon information indicating that Samurai was not an actual tobacco product manufacturer.

Despite the fact that Sudamax was the actual manufacturer of Berkley brand cigarettes, Samurai repeatedly claimed to be the manufacturer. Consistent with this claim, and in spite of the fact that Samurai did not manufacture the Berkley brand, Samurai applied for certification to Tennessee's directory of approved tobacco product manufacturers as the manufacturer of Berkley brand cigarettes. Tenn. Code Ann. § 67-4-2602(b).

The State refused to authorize the requested release of money from the escrow account. In an August 13, 2004 letter to the Tennessee Attorney General's Office from Samurai's lawyer, the lawyer argued that "[a]ny attempt to use this request retroactively to prevent the disbursement of the 2003 escrow is beyond the authority delegated to the Attorney General by virtue of these statutes." On August 20, 2004, in an e-mail to the Tennessee Attorney General's Office, the same Samurai lawyer stated, "[t]o be honest, my clients are feeling like Tennessee is holding its escrow 'hostage' to obtain this information [i.e., concerning the relationship between Samurai and Sudamax]. I really think we should agree on the release and then do the information providing." Despite Samurai's protests, the State never authorized the release of any escrow funds.

As discussed above, as of April 20, 2004, Tennessee amended its Act to delete the "allocable share" language that had allowed non-participating manufacturers that sold cigarettes in only a few states to obtain the release of most of their escrow deposits. Tenn. Code Ann. § 47-31-103(a)(2)(B)(ii). Despite this amendment, Tantus continued to sell Berkley brand cigarettes, which were manufactured by Sudamax, in Tennessee. Sales of the Berkley brand cigarettes in Tennessee continued into 2005. Even though the verbal agreement between Sudamax and Tantus required Tantus to deposit escrow funds for the sale of Berkley brand cigarettes, Tantus failed to make any escrow deposits for 2004 sales. On May 15, 2005, Sudamax sued Tantus in federal court for its alleged refusal to make escrow deposits for the sale of Berkley brand cigarettes in various states. Since the time of that lawsuit, Samurai and Centurion have basically ceased to exist. Sudamax has acquired the assets and liabilities, to the extent that any existed, of both Samurai and Centurion.

On August 4, 2005, the State of Tennessee filed suit against Sudamax and its affiliates, Samurai and Centurion, for violation of the Escrow Fund Act. The State alleged, in relevant part, that the defendants failed to deposit: (1) $171,103.23 into escrow for sales

of Berkley brand cigarettes in Tennessee in 2003; (2) $1,459,282.89 for sales of Berkley brand cigarettes in 2004; and that defendants (3) owed a civil penalty of up to 300% of the amount they knowingly withheld from escrow. The State subsequently amended its complaint to allege that the defendants had also failed to deposit $402,794.26 into escrow for sales of Berkley brand cigarettes in Tennessee in 2005.

Thereafter, the State moved for partial summary judgment, asking the trial court to order that Sudamax: (1) is liable under the law as the manufacturer of the cigarettes; (2) is required to deposit $2,033,180.38 into escrow as required under the Act; and (3) is required to pay a civil penalty of up to $6,099,546.14 for knowingly violating the Act. On July 20, 2008, the trial court entered an order denying the State's motion for partial summary judgment. By this order, the trial court also required the defendants to transfer the $253,505.18 that was in Samurai's qualified escrow fund into a qualified escrow fund for Sudamax.

On September 17, 2008, Tantus filed a motion to intervene, alleging that Sudamax and Samurai had agreed to assign their rights in the escrow accounts to Tantus. Specifically, Tantus alleged that the assignment was entered in April 2008, and was effective on December 10, 2007. As the alleged assignee, Tantus claimed that it was entitled to a release of $215,767.92 from the escrow fund, which amount was allegedly due to Samurai. The State opposed the motion, arguing, *inter alia*, that only the manufacturer of the cigarettes can make a claim for release of escrow funds, and that Tantus, who was allegedly not a manufacturer, lacked standing to bring its claim. On November 6, 2008, the trial court granted Tantus' motion to intervene, and Tantus filed its intervening complaint on November 21, 2008. The State then filed a motion to dismiss the intervening complaint, reiterating its argument that Tantus lacked standing because it is not a tobacco products manufacturer. The trial court denied the State's motion to dismiss. Thereafter, the State filed its answer to the intervening complaint, along with a counterclaim for set-off based upon Sudamax's alleged failure to deposit the escrow funds required by the Act. The State further asserted the expiration of the statute of limitations as an affirmative defense.

Following discovery, the State filed a motion for summary judgment against Tantus, and a motion for partial summary judgment against Sudamax. In relevant part, the State argued that Tantus's intervening complaint was barred by the three-year statute of limitations for property torts, and that the entire amount sought in the intervening complaint was subject to set-off for Sudamax's unpaid escrow. The State further argued that the undisputed material facts established the total amount of unpaid escrow owed by Sudamax and also established liability for civil penalties for at least two knowing violations of the Act. Tantus also filed a motion for summary judgment against the State. Sudamax did not respond to the State's summary judgment motion, and the trial court ordered Sudamax to deposit

$1,864,549.20 into escrow for sales of cigarettes in Tennessee in 2004 and 2005. The trial court also found Sudamax liable for two knowing violations of the Act.

On December 11, 2009, the trial court heard arguments on the State's and Tantus's cross-motions for summary judgment regarding the intervening complaint. Although the trial court determined that the intervening complaint alleged a tort, it concluded that the applicable statute of limitations was ten years under Tennessee Code Annotated Section 28-3-110(3). The trial court ultimately denied both motions for summary judgment. Specifically, the trial court stated that, "[a]s the assignee to the escrow account, Tantus's claim for a release is subject to the same defenses that would be available against the assignor, Sudamax. This includes the State's counterclaim for a set-off." The court further noted that there was a dispute of material fact regarding the amount of money at issue in the intervening complaint.

The State then moved for summary judgment against Sudamax for the amount of civil penalties, attorney's fees and other costs. Sudamax did not respond to the State's motion, and the trial court ordered Sudamax to pay, to the State, $5,593,647.60 in civil penalties, and $48,581.76 in costs and attorney's fees. The State filed a supplemental counterclaim against Tantus, alleging set-off for Sudamax's unpaid civil penalties, and costs.

The State and Tantus eventually entered into a stipulation, which established that the amount of money in controversy was $201,149.81. This stipulation resolved the genuine issue of material fact that had prevented summary judgment, *supra*. Both the State and Tantus again moved for summary judgment on the intervening complaint. These cross-motions for summary judgment were heard on October 29, 2010. On November 19, 2010, the trial court granted Tantus's motion for summary judgment, and denied the State's. The State filed a timely notice of appeal on November 24, 2010. On the same day, the State also filed a motion to stay execution of the judgment, pending this appeal. Tantus opposed the motion. The State and Tantus ultimately agreed to transfer the $201,149.81 in dispute from Sudamax's qualified escrow fund into court, pending the appeal. The State now appeals for the purpose of returning the amount in controversy to Sudamax's qualified escrow fund. As set out in its brief, the State's issue are as follows:

> 1. Did the trial court err when it ruled that an entity that is not the tobacco product manufacturer has standing to make a claim for the release of money from a qualified escrow fund established pursuant to the Tennessee Manufacturers' Escrow Fund Act of 1999?
>
> 2. Did the trial court err when it ruled that the claim for the

release of money from a qualified escrow fund established pursuant to the Tennessee Tobacco Manufacturers' Escrow Fund Act of 1999 is not barred by the three-year statute of limitations for property torts?

3. Did the trial court err when it ruled that the claim by the tobacco product manufacturer's assignee for the release of money from a qualified escrow fund established pursuant to the Tennessee Tobacco Manufacturers' Escrow Fund Act of 1999 is not subject to a counterclaim for set-off based on money owed by the tobacco product manufacturer pursuant to the Tennessee Tobacco Manufacturers' Escrow Fund Act of 1999?

A trial court's decision to grant a motion for summary judgment presents a question of law. Our review is therefore *de novo* with no presumption of correctness afforded to the trial court's determination. ***Bain v. Wells***, 936 S.W.2d 618, 622 (Tenn.1997). "This Court must make a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied." ***Mathews Partners, LLC v. Lemme***, No. M2008-01036-COA-R3-CV, 2009 WL 3172134, at *3 (citing ***Hunter v. Brown***, 955 S.W.2d 49, 50-51 (Tenn. 1977)).

When a motion for summary judgment is made, the moving party has the burden of showing that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. The moving party may accomplish this by either: (1) affirmatively negating an essential element of the non-moving party's claim; or (2) showing that the non-moving party will not be able to prove an essential element at trial. ***Hannan v. Alltel Publ'g Co.***, 270 S.W.3d 1, 8-9 (Tenn. 2008). However, "[i]t is not enough for the moving party to challenge the nonmoving party to 'put up or shutup' or even to cast doubt on a party's ability to prove an element at trial." ***Id***. at 8. If the moving party's motion is properly supported, "[t]he burden of production then shifts to the nonmoving party to show that a genuine issue of material fact exists." ***Id.*** at 5 (citing ***Byrd v. Hall***, 847 S.W.2d 208, 215(Tenn. 1993)). The non-moving party may accomplish this by: "(1) pointing to evidence establishing material factual disputes that were overlooked or ignored by the moving party; (2) rehabilitating the evidence attacked by the moving party; (3) producing additional evidence establishing the existence of a genuine issue for the trial; or (4) submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P. Rule 56.06." ***Martin v. Norfolk S. Ry. Co.***, 271 S.W.3d 76, 84 (Tenn. 2008) (citations omitted).

When reviewing the evidence, we must determine whether factual disputes exist. In evaluating the trial court's decision, we review the evidence in the light most favorable to the

nonmoving party and draw all reasonable inferences in the nonmoving party's favor. ***Stovall v. Clarke***, 113 S.W.3d 715, 721 (Tenn. 2003). If we find a disputed fact, we must "determine whether the fact is material to the claim or defense upon which summary judgment is predicated and whether the disputed fact creates a genuine issue for trial." ***Mathews Partners***, 2009 WL 3172134, at *3 (citing ***Byrd***, 847 S.W.2d at 214). "A disputed fact is material if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." ***Byrd***, 847 S.W.2d at 215. A genuine issue exists if "a reasonable jury could legitimately resolve the fact in favor of one side or the other." ***Id***. "Summary [j]udgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion." ***Landry v. South Cumberland Amoco, et al.***, No. E2009-01354-COA-R3-CV, 2010 WL 845390, at *3 (Tenn. Ct. App. March 10, 2010) (citing ***Carvell v. Bottoms***, 900 S.W.2d 23 (Tenn.1995)).

In the instant case, the order appealed, i.e., the order granting summary judgment in favor of Tantus, reads, in pertinent part, as follows:

> Intervening plaintiff Tantus...and intervening defendant the State of Tennessee...having each moved for summary judgment on all claims asserted in Tantus' intervening complaint and the State's counterclaim thereto....
> **IT IS HEREBY ORDERED AND ADJUDGED THAT** the State's motion for summary judgment dismissing Tantus' intervening complaint and granting judgment on its counterclaim is hereby **DENIED**.
> **IT IS FURTHER ORDERED AND ADJUDGED THAT** Tantus' motion to award summary judgment on its intervening complaint and to dismiss the State's counterclaim is hereby **GRANTED** and that Tantus is entitled to the immediate release from escrow of $201,149.81 from amounts deposited in connection with cigarette[] sales in Tennessee in 2003 and pursuant to the escrow agreement executed between Samurai...and Bank One N.A., on or about August 7, 2003.
> This is an appealable order.

As discussed in this Court's recent opinion, ***Winn v. Welch Farm, L.L.C.***, No. M2009-01595-COA-R3-CV, 2010 WL 2265451 (Tenn. Ct. App. June 4, 2010):

> In 2007, Tennessee Rule of Civil Procedure 56.04 was amended to require the trial court to "state the legal grounds upon which the court denies or grants the motion," and to include such

statement in the order reflecting the trial court's ruling. When the legal grounds for the trial court's decision are omitted, a reviewing court cannot analyze the decision's validity, and appellate review becomes unnecessarily speculative. "Without such a statement ... a reviewing court is left to wonder on what grounds the trial court granted the motion for summary judgment." *Eluhu v. HCA Health Servs. of Tenn. Inc.*, No. M2008-01152-COA-R3-CV, 2009 WL 3460370, at *21. The 2007 amendment to Tenn. R. Civ. P. 56.04 was intended to cure this problem. The Rule's requirements are specific and without exception. Tenn. R. Civ. P. 56.04; *see also Eluhu*, 2009 WL 3460370, at *21(vacating the trial court's grant of summary judgment upon finding that the trial court did not state the legal grounds upon which the trial court granted the motion); *Burse v. Hicks*, No. W2007-02848-COA-R3-CV, 2008 WL 4414718, at *2 (Tenn. Ct. App. Sept. 30, 2008) (finding noncompliance with Rule 56.04 where trial court's order merely provided "it is hereby ordered, adjudged and decreed that the Motion for Summary Judgment of [the defendant] is well taken and should be granted pursuant to law and there being no material disputed fact," but proceeding with appellate review upon a finding that there was only a "clear legal issue").

*Winn v. Welch Farm*, 2010 WL 2265451, at *5.

In *Winn*, this Court determined that the order appealed did not comply with Rule 56.04 because the order merely stated that "the Court believes there are no genuine issues of material fact and that the Respondents are entitled to judgment as a matter of law." *Winn v. Welch Farm*, 2010 WL 2265451, at *6. We further determined, in *Winn*, that, "unlike *Burse*, this Court cannot find that this appeal presents a 'clear legal issue.'" *Id*. (citation omitted). Like the intervening complaint in the case at bar, the Winn complaint presented numerous legal theories upon which the plaintiff's claims were based. Although we noted that, "in other cases, this Court has 'soldier[ed] on without guidance from the trial court,'" *id*. (citing *Church v. Perales*, 39 S.W.3d 149, 158 (Tenn. Ct. App. 2000)), we ultimately determined that *Winn* was not such a case. *Id*. In *White v. Pulaski Elec. Sys.*, No. M2007-01835-COA-R3-CV, 2008 WL 3850525, at *3 (Tenn. Ct. App. Aug. 18, 2008) this Court proceeded with review after determining that the legal grounds upon which the trial court granted summary judgment were "readily found" in the transcript of the hearing contained in the record and that the revisions to the rule became effective after the hearing and only twelve days prior to the entry of the order. *See also Burgess v. Kone, Inc.*, No.

M2007-0259-COA-R3-CV, 2008 WL 2796409 (Tenn. Ct. App. July 18, 2008) (proceeding with review after finding that the basis for the trial court's decision was "readily ascertainable" from a CD-Rom of the hearing that was contained within the appellate record). By citing **Church** and **White**, we do not wish to imply that it is the obligation of this Court to scrutinize the transcript, in order to discern a trial court's reasoning, and to only apply the mandatory language of Tennessee Rule of Civil Procedure 56.04 if that reasoning cannot be determined. Because a trial court speaks through its orders, **Palmer v. Palmer**, 562 S.W.2d 833, 837 (Tenn. Ct. App. 1977), Tennessee Rule of Civil Procedure 56.04 ensures that the trial court's voice is clearly understood by any reviewing court.[3]

Like the **Winn** case, the instant case does not present a scenario, such as those in **Church** and **White**, where we are able to "soldier on" in the face of a lack of compliance with Rule 56.04. Here, neither the trial court's order, nor the transcript of the hearing on the motions for summary judgment, clearly indicate the legal grounds upon which the trial court based its decision to award summary judgment in favor of Tantus. The judgment at issue here involves complex questions of law, which require explanation and analysis. The trial court's order does not provide this information. Therefore, if this Court were to proceed with adjudication of the substantive issues, we would, at best, be speculating as to the reasoning behind the trial court's decision and the facts it considered. In short, "[w]e cannot proceed with a review, speculating on the legal theories upon which the trial court may have ruled and the legal conclusions the trial court may have made." **Winn**, 2010 WL 2265451, at *6. Consequently, we must vacate the order of the trial court and remand for further proceedings consistent with this Opinion, including compliance with Tennessee Rule of Civil Procedure 56.04 by stating "the legal grounds upon which the court denies or grants the motion." Costs of this appeal are taxed one-half to the Appellant, State of Tennessee, and one-half to Appellee Tantus Tobacco, L.L.C., for which execution may issue if necessary.

---

[3] In **Cunningham v. Cunningham**, No. W2006–02685–COA–R3–CV, 2008 WL 2521425 (Tenn. Ct. App. June 25, 2008), this Court explained:

> A judgment must be reduced to writing in order to be valid. It is inchoate, and has no force whatever, until it has been reduced to writing and entered on the minutes of the court, and is completely within the power of the judge or Chancellor. A judge may modify, reverse, or make any other change in his judgment that he may deem proper, until it is entered on the minutes, and he may then change, modify, vacate or amend it during that term, unless the term continues longer than thirty days after the entry of the judgment, and then until the end of the thirty days.

**Cunningham**, 2008 WL 2521425, at *5 (citing **Broadway Motor Co., Inc. v. Fire Ins. Co.**, 12 Tenn. App. 278, 280 (1930)). Consequently, "[w]e do not review the court's oral statements, unless incorporated in a decree, but review the court's order and judgments for that is how a court speaks." **Id**.

_____
J. STEVEN STAFFORD, JUDGE