# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs July 8, 2015

## RONALD CHRISTOPHER v. EAST TENNESSEE SPINE AND ORTHOPAEDIC SPECIALISTS, P.C.

**Appeal from the Chancery Court for Hamblen County**
**No. 2014CV296      Hon. Douglas T. Jenkins, Chancellor**

---

### No. E2014-02552-COA-R3-CV-FILED-AUGUST 25, 2015

---

## NICHOLAS GRIMALDI, D.O., ET AL. v. RONALD CHRISTOPHER, M.D.

**Appeal from the Chancery Court for Hamblen County**
**No. 2014CV302      Hon. Douglas T. Jenkins, Chancellor**

---

### No. E2014-02556-COA-R3-CV-FILED-AUGUST 25, 2015

---

This consolidated appeal involves the denial of two motions to alter or amend the court's dismissal of a complaint requesting corporate dissolution of a medical practice and a shareholder derivative suit involving the same medical practice. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., C.J., and D. MICHAEL SWINEY, J., joined.

Mark S. Stapleton, Rogersville, Tennessee, for the appellant, Ronald Christopher, M.D.

Troy L. Bowlin, II, Morristown, Tennessee, for the appellees, East Tennessee Spine and Orthopaedic Specialists, P. C. and Nicholas Grimaldi, D.O.

**OPINION**

## I. BACKGROUND

Ronald Christopher, M.D. and Nicholas Grimaldi, D.O. (collectively "the Parties") are physicians who practice orthopaedic medicine in Morristown, Tennessee. After working together elsewhere, they formed East Tennessee Spine & Orthopaedic Specialists ("ETSOS" or "the practice"), ETSOS Equipment Company ("Equipment Company"), and Ronics, LLC ("Ronics"). Equipment Company was formed to buy equipment and furnishings for the practice, and Ronics was formed to develop property for the practice.

Rebecca Moul, M.D., bought into the practice in April 2014. At that time, Drs. Christopher, Grimaldi, and Moul each owned a 1/3 share of the practice. The doctors established a staffing structure in which some employees were employed by the practice, while others were employed by an individual doctor. Those employed by the practice were deemed "universal employees" and paid out of a common fund, while the others were allocated to an individual doctor.

Following the entry of Dr. Moul into the practice, the Parties fought over a piece of medical equipment initially purchased by Dr. Grimaldi. The dispute escalated to the extent that the working environment became highly dysfunctional and divided. The staff aligned with Dr. Christopher, while the human resource personnel aligned with Dr. Grimaldi. Eventually, Dr. Moul also aligned herself with Dr. Grimaldi.

On June 27, 2014, Dr. Christopher filed a complaint for corporate dissolution. He requested the appointment of a corporate custodian to immediately accept administrative control of the practice. He alleged that Drs. Grimaldi and Moul were excluding him from meaningful participation in the administration of the practice and had created division amongst the employees. Dr. Grimaldi responded to the complaint as a registered agent and shareholder of the practice. He denied wrongdoing and asserted that dissolution of the practice was unnecessary. He suggested that Dr. Christopher simply leave the practice. In keeping with his suggestion, he also filed a shareholder derivative suit on July 1, 2014, alleging that the practice was entitled to injunctive relief and monetary damages from Dr. Christopher for his "continuous unlawful conduct, breach of fiduciary duty to the corporation, gross mismanagement, and abuse of control."

A hearing was held to address both complaints on July 8, 2014, after which the trial court appointed a special master. Pending the special master's report, the court also ordered the Parties, as well as Dr. Moul, to comply with the following instructions:

a) The parties and by extension their staff are ORDERED to do no harm to any other person, party, or medical practice, staff or business by work or deed.

b) No party address or discuss the privileges or credentialing of any other party with any medical provider in a negative manner and the parties are specifically directed to refrain from any action which could negatively affect the privileges or credentialing of any party.

c) The parties SHALL NOT speak in any divisive or contentious way to any of the staff members of either [the Practice] or any principal of [the Practice] or other provider including those of [Dr. Moul] and otherwise refrain from interfering with staff members or otherwise preventing them from doing their work. [L]eave all staff members alone including the staff at [the Practice] and let them do their work.

d) The parties are ORDERED to refrain from interfering with billing clerks, and the billing staff and to take, or refrain from, action(s) in order to maintain the status quo of the billing operation of [the Practice] and the principals of these litigations[.]

e) The issue of reinstatement payment of particular staff of [the Practice] or any principal to this litigation is reserved pending the report of the Special Master.

The trial court appointed Suzanne Cooke ("the Special Master") as the special master.

The Special Master filed a report approximately one month after the court's order. She reported that tensions had escalated since the initial hearing. Specifically, Dr. Grimaldi fired LaShae Miller upon his return to the office after the hearing. Two days later, the police intervened in a physical confrontation between Dr. Grimaldi and Dr. Christopher's wife. The conflict only intensified further, causing disruption to the working environment and the practice in general. As pertinent to this appeal, the Special Master determined that appointment of a custodian was necessary to "oversee every possible aspect of [the Practice] from human resource issues to billing to basic business management." The Special Master noted that at least two employees, Ms. Miller and Melissa Johnson, had been fired for aligning with Dr. Christopher, while others had received bonuses or gift cards for aligning with Dr. Grimaldi. The Special Master recommended full reinstatement for Ms. Miller and Ms. Johnson as universal employees. Likewise, she recommended that those hired post-dispute by Drs. Grimaldi and Moul should be allocated to either Dr. Grimaldi or Dr. Moul for purposes of salary and

benefits. She further advised that each doctor "should be restrained from firing and/or hiring any further staff, regardless of whether they are universal or allocated" employees.

A combined hearing was held on September 2, 2014, to address both complaints in light of the Special Master's report. Following extensive testimony concerning the hostile work environment and the firing of several employees, Dr. Christopher explained that with the exception of two employees, Jessica Jones and Ben Helton, the staff was primarily comprised of universal employees employed by the practice, not an individual doctor. He related that certain employees were allocated to work with individual doctors after the dispute but asserted that they remained universal employees. He conceded that non-professional universal employees were subject to termination by a simple majority vote pursuant to the shareholder's agreement. He further conceded that Dr. Grimaldi had only fired non-professional universal employees, specifically Ms. Johnson and Ms. Miller, in compliance with the shareholder's agreement. He related that he later hired Ms. Johnson and Ms. Miller, along with others, as his employees.

Following the hearing, the court reinstated Ms. Miller as a universal employee and provided that a neutral party should determine any future employment decisions unless all three doctors agreed on an employment decision. He further held that Ms. Johnson should remain Dr. Christopher's employee because her firing occurred prior to the July 8 hearing. The court then specifically admonished Ms. Miller to respect her employers, including Drs. Grimaldi and Moul, and perform her job as directed.

The Parties came to an agreement on the remaining issues before the court in the midst of the hearing. As pertinent to this appeal, their agreement provided that Dr. Grimaldi would purchase the practice, Equipment Company, and Ronics and the accompanying Morristown property for $4,500,000, while Dr. Christopher would purchase a piece of property in Jefferson City for $300,000 or accept Dr. Grimaldi's purchase obligation if Dr. Grimaldi could not obtain financing. The agreement permitted Dr. Christopher to remain on the property for 180 days.

The agreement was never reduced to writing; however, the court entered an order in which it adopted the Special Master's recommendations as to Ms. Miller but rejected the recommendations as to the other re-assigned employees. The court appointed Richard Clark as custodian to implement the other recommendations in the report.

Thereafter, the Parties executed a settlement agreement and a waiver and estoppel agreement concerning the purchase of the properties. Neither the settlement agreement nor the waiver and estoppel agreement addressed the continued employment of staff or Dr. Christopher's right to remain on the property following closing. The closing occurred on November 19, 2014. The court entered an order of dismissal in both cases

on November 20, 2014. That morning, Dr. Grimaldi called the authorities to remove Dr. Christopher's support staff from the premises. Mr. Clark, who was immediately hired by Dr. Grimaldi, also fired Ms. Miller and Ms. Johnson. Dr. Grimaldi later filed an assault charge against Dr. Christopher and terminated Dr. Christopher as a provider at the practice.

An emergency hearing was held on record in the court's chambers. The court directed the Parties to maintain the status quo at the practice pending a final hearing on any forthcoming motions. Dr. Christopher then filed motions to alter or amend the trial court's orders of dismissal in both cases to include the terms announced in court on September 2, 2014. Dr. Grimaldi responded by asserting that Dr. Christopher prepared the settlement agreement, which required the dismissal of both complaints, for purposes of completing the transfer of property.[1] He argued that Dr. Christopher was free to insert any terms he desired in the agreement but that Dr. Christopher simply failed to memorialize the additional terms discussed at the September 2 hearing. He further claimed that the terms discussed at the hearing were unenforceable without a signed writing pursuant to the statute of frauds; that the additional terms were superseded by the settlement agreement; and that the waiver and estoppel agreement precluded the repudiation of the settlement agreement.

Following a hearing, the trial court denied the motions to alter or amend the orders of dismissal, finding that the written settlement agreement contained a merger clause and was the final agreement between the Parties. However, the court directed the Parties to maintain the status quo at the practice pending the finality of the orders denying the motions to alter or amend. This timely consolidated appeal of the denial of the motions to alter or amend followed.

## II.    ISSUE

We consolidate and restate the issue on appeal as follows:

Whether the trial court abused its discretion in denying the motions to alter or amend the orders of dismissal.

---

[1] Dr. Grimaldi also filed a motion to recuse Chancellor Jenkins. The motion was ultimately denied and is not at issue on appeal.

## III. STANDARD OF REVIEW

This court reviews a trial court's decision to grant or deny a motion to alter or amend a judgment under an abuse of discretion standard. *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003). "A trial court abuses its discretion only when it 'applie[s] an incorrect legal standard or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining.'" *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999)). If a discretionary decision is within a range of acceptable alternatives, we will not substitute our judgment for that of the trial court simply because we may have chosen a different alternative. *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999).

## IV. DISCUSSION

A party may file a motion to alter or amend a judgment within 30 days after the entry of the judgment. Tenn. R. Civ. P. 59.04. "The purpose of a Rule 59.04 motion to alter or amend a judgment is to provide the trial court with an opportunity to correct errors before the judgment becomes final." *In re M.L.D.*, 182 S.W.3d 890, 895 (Tenn. Ct. App. 2005). These motions should "be granted when the controlling law changes before the judgment becomes final; when previously unavailable evidence becomes available; or to correct a clear error of law or to prevent injustice." *Id.* These motions "should not be used to present new, previously untried or unasserted theories or legal arguments." *Id.*

Dr. Christopher argues that his motions should have been granted to prevent injustice when they intended to reach a global resolution based upon more than just a transfer of property. He claims that the terms announced at the hearing were fully enforceable as a consent order or pursuant to contract principles and that the later document did not contain a merger clause. Dr. Grimaldi responds that the court never entered a consent order and that the terms announced in court were incomplete and contrary to the statute of frauds. He asserts that they continued negotiations following the hearing until Dr. Christopher finally presented the settlement agreement for approval.

"A judgment by consent is in substance a contract of record made by the parties and approved by the court." 49 C.J.S Judgments § 227. Consent orders are "conclusive upon the consenting parties, and can neither be amended nor in any way varied without like consent; nor can it be reheard, appealed from or reviewed upon writ of error." *Nance v. Pankey*, 880 S.W.2d 944, 946 (Tenn. Ct. App. 1993). While settlement terms were announced to the court at the September hearing, an order was never entered based upon those terms. A review of the record reveals that the terms announced may also not be characterized as a contract because the Parties were still negotiating following the

hearing. *Higgins v. Oil, Chem. and Atomic Workers Int'l Union*, 811 S.W.2d 875, 879 (Tenn. 1991) (holding that a contract, either written or oral, "must result from a meeting of the minds of the parties in mutual assent to the terms"). Indeed, the record reflects that the Parties continued discussions following the hearing and that a complete agreement was not reached until the Parties signed the settlement agreement drafted by Dr. Christopher. The signed agreement required the dismissal of both complaints as a settlement term and was a valid, enforceable contract. With these considerations in mind, we affirm the trial court's refusal to alter or amend its orders of dismissal based upon the signed agreement.

## V.     CONCLUSION

The judgment of the trial court is affirmed. We remand this case to the trial court for further proceedings as may be necessary. Costs of the appeal are taxed to the appellant, Ronald Christopher, M. D.

_____
JOHN W. McCLARTY, JUDGE