FILED
06/11/2019
Clerk of the
Appellate Courts

# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### February 22, 2018 Session

## BOBBIE SEALS STUBBLEFIELD v. MORRISTOWN-HAMBLEN HOSPITAL ASSOCIATION, ET AL.

### Appeal from the Circuit Court for Hamblen County
### No. 15CV193     Alex E. Pearson, Judge

---

### No. E2017-00994-COA-R3-CV

---

This appeal involves a re-filed health care liability action[1] in which the plaintiff challenges the summary judgment dismissal of her claim.  We reverse the court's grant of summary judgment, in part.  The case is remanded for further proceedings consistent with this opinion.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed in Part, Affirmed in Part; Case Remanded

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., J. and D. MICHAEL SWINEY, C.J., joined.

Mark T. Hurt, Abingdon, Virginia, for the appellants, Bobbie Seals Stubblefield.

F. Michael Fitzpatrick and Rachel Park Hurt, Knoxville, Tennessee, for the appellees, Morristown-Hamblen Hospital Association d/b/a Morristown Hamblen Healthcare System and Angela Adams, R.N.

James G. O'Kane and Raymond G. Lewallen, Jr., Knoxville, Tennessee, for the appellees, Morristown Heart Consultants, PLLC and Sunil T. Ramaprasad, M.D.

---

[1] Tennessee Code Annotated section 29-26-101 now defines most cases occurring in a medical context as "health care liability actions."  The statute specifies that such an action "means any civil action, including claims against the state or a political subdivision thereof, alleging that a health care provider or providers have caused an injury related to the provision of, or failure to provide, health care services to a person, regardless of the theory of liability, on which the action is based." *See* Acts 2011, ch. 510, § 8.  Effective April 23, 2012, the term "health care liability" replaced "medical malpractice" in the Code.  *See* Acts 2012, ch. 798.  The provisions of the revised statute apply to this action.

**OPINION**

## I.    BACKGROUND

The claim at issue relates to the alleged negligent post-operative care of Bobbie Seals Stubblefield ("Plaintiff") at Morristown-Hamblen Hospital Association ("the Hospital"). On October 20, 2010, Plaintiff underwent a cardiac catheterization performed by Pragnesh Patel, M.D. at the Hospital. Plaintiff remained at the Hospital overnight for routine post-operative care and was attended to by Angela Adams, R.N., among others. Per Dr. Patel's instruction, Nurse Adams administered nitroglycerin intravenously throughout the night. Plaintiff later complained that the nitroglycerin was causing "an unbearable headache and nausea." Plaintiff claims that she "begged" Nurse Adams to stop administering nitroglycerin, while Nurse Adams claims that Plaintiff consented to further doses once she was advised of the medical necessity. It was later discovered that Plaintiff developed a hematoma and pseudoaneurysm in her groin at the catheterization site. The hematoma continued to grow, despite treatment provided by the nurses on staff. The nurses paged the cardiologist on-call, Sunil T. Ramaprasad, M.D. for assistance. He did not report to the Hospital. Instead, he ordered placement of a device to stop the bleeding and arranged for the intervention of a vascular surgeon, who reported to the hospital immediately and performed emergency surgery to repair the femoral artery in the early morning hours of October 21.

As pertinent to this appeal, On February 7, 2012, Plaintiff filed a medical malpractice action against the Hospital, Nurse Adams, Morristown Heart Consultants, PLLC ("MHC"), and Dr. Ramaprasad (collectively "Defendants"). She also filed a separate battery claim against Nurse Adams based upon the nurse's continued administration of nitroglycerin over her objection. Plaintiff voluntarily dismissed the initial suit on December 5, 2014, after extensive discovery. Plaintiff then filed a second suit pursuant to the saving statute on December 2, 2015, in compliance with the health care liability pre-suit notice statutes.

Defendants denied wrongdoing and filed motions for summary judgment with supporting affidavits and depositions taken during the pendency of the first lawsuit. Nurse Adams attested that Plaintiff gave her consent to the continued administration of nitroglycerin once advised of the medical necessity. Nurse Adams explained that she would have contacted the treating physician to obtain additional orders if Plaintiff had so objected to the necessary medical treatment. She further attested that the hospital care and treatment rendered by her and others was in accordance with the standard of care for registered nurses in the Hamblen County community.

Likewise, Dr. Ramaprasad attested as follows:

On October 21, 2010, I was on call for [the Hospital], and I received telephone calls from the cardiac care unit nursing staff regarding [Plaintiff]. After being advised that she had bleeding, my responses included ordering the placement of a Fem-o-stop, a device which is used to prevent further bleeding, asking for an experienced and skilled cardiac cath technician to go to the cardiac care unit, ordering an ultrasound, and I arranged for a vascular surgeon, Dr. Assadnia, to intervene and evaluate the patient and formulate a treatment plan for [Plaintiff]. I consulted Dr. Assadnia because it is within his area of speciality to treat the large hemotoma and psuedoaneurysm that developed in [Plaintiff's] right groin area, and it is not within my area of expertise to provide corrective treatment for this. All times on [October 21], I responded promptly and appropriately to the information provided to me by the cardiac care unit nursing staff, issued appropriate orders, and arranged for proper consultation, with the result that [Plaintiff's] hematoma and psuedoaneurysm were promptly treated by Dr. Assadnia[.]

It is my opinion within a reasonable degree of medical certainty that I complied in all respects with the standard of care applicable to the care and treatment of patients such as [Plaintiff] who experienced the events that occurred on [October 21], as that standard of care applies in Morristown, Tennessee, or in similar communities. Having complied with the standard of care there was no negligence or other fault by me as alleged in the Complaint, and [Plaintiff's] injuries and damages claimed in the Complaint were not due to any breach of standard of care by me.

On May 4, 2016, Plaintiff responded to the motion for summary judgment by requesting additional time in which to conduct discovery, including taking the deposition of Dr. Assadnia. The court granted Plaintiff's request for more time on May 27. Plaintiff then deposed Dr. Assadnia on August 9. Plaintiff again requested additional time on September 13, and the case was re-set for hearing on October 4. While Plaintiff provided responses to Defendants' statement of undisputed material facts and filed various motions reiterating her belief that Defendants' breached the applicable standard of care, Plaintiff never set forth any evidence by affidavit, deposition, or otherwise to show that there was a genuine issue of material fact for trial. However, on September 1, 2016, Plaintiff served via email and mail a supplemental response to Defendants' interrogatories in which Plaintiff identified two experts, Melanie Jill Ogle, R.N. and William M. Lieppe, M.D., and provided a summary of their expected expert opinions.

- 3 -

Plaintiff's supplemental response provided, in pertinent part, that Nurse Ogle was "expected to testify, within a reasonable degree of professional certainty, that [the Hospital's] nurses breached the applicable standard of care in their treatment." Plaintiff also provided that Dr. Lieppe was expected to testify concerning Dr. Ramaprasad's failure to comply with the applicable standard of care in his treatment and "on causation as to breaches of the applicable standard of care for both the nurses and Dr. Ramaprasad." Plaintiff continued, in pertinent part, as follows:

Dr. Lieppe is expected to opine, within a reasonable degree of medical certainty, the following:

1.     The negligence of the nurses, as opined by Nurse Ogle, was a cause of [Plaintiff's] hematoma and pseudoaneurysm. It is more likely than not, that the nurses' improper administration of Nitroglycerin and their failure to timely treat [Plaintiff] with anti-nausea medicine, individually and cumulatively caused [Plaintiff] severe headaches, nausea, and vomiting, which in turn resulted in her thrusting movements and inability to keep still, which in turn were the cause of the hematoma and pseudoaneurysm.

2.     Dr. Ramaprasad violated the recognized standard of acceptable medical practice for cardiologists applicable as of October 2010 in Morristown, Tennessee or similar community in his treatment of [Plaintiff] as an on-call physician. Those violations include:

a. Failing to come to the hospital to examine and supervise the treatment of [Plaintiff] after learning from the nursing staff that she was having complications, including a growing hematoma, and that the nursing staff was having difficulty dealing with those complications.

b. Failure to arrange immediately for [Plaintiff] to be seen by a vascular surgeon after he was notified that the nursing staff could not control the bleeding, after the charge nurse told him that [Plaintiff] was bleeding to death, and after receiving information from which Dr. Ramaprasad knew or should have known that [Plaintiff] would likely need the services of a vascular surgeon.

On September 30, Plaintiff requested a continuance, claiming that the Hospital had unlawfully coerced Nurse Ogle to withhold her testimony. Plaintiff explained that after she disclosed Nurse Ogle as an expert, Nurse Ogle advised counsel that she could no longer provide expert testimony because her supervisor at Fort Sanders Regional Medical

Center ("Fort Sanders") threatened her with the loss of her job if she testified. Plaintiff explained that Fort Sanders and the Hospital are in the Covenant Health network of hospitals and reasoned that the Hospital encouraged or instigated the unlawful coercion at issue. Plaintiff requested an evidentiary hearing to explore the matter further. Plaintiff further asserted that a continuance was necessary because Nurse Ogle's testimony was essential to her response to the motions for summary judgment and a predicate to the planned testimony of Dr. Lieppe, who had also not yet provided an affidavit.

The case proceeded to a hearing on October 4, at which Hospital strongly objected to Plaintiff's accusation of witness coercion. Hospital further responded that they had spoken with the Human Resources Department at Fort Sanders and found that Nurse Ogle had not worked at Fort Sanders for more than a year prior to Plaintiff's accusation. Hospital provided an affidavit from Angie Montgomery, the Human Resources Operations Specialist, in support of its claim. Hospital conceded that Nurse Ogle was presently employed by another hospital in the Covenant Health network. MHC and Dr. Ramaprasad responded by asserting that no response had been filed in opposition to their motion for summary judgment and that Hospital's alleged witness tampering had no bearing on the case against them.

Following the hearing, the court granted summary judgment in favor of Defendants, by order entered on October 21. The court held that Plaintiff had failed to file a properly supported response to the motions for summary judgment, establishing that there was no deviation in the applicable standard of care and no causation for Plaintiff's injuries. The court also denied the pending motions for a continuance and an evidentiary hearing, explaining that Plaintiff was provided several continuances and still had not produced an expert witness to rebut Defendants' motions with supporting affidavits.

On November 21, Plaintiff filed a motion to alter or amend the court's judgment, claiming that the court's denial of the motion for a continuance was illogical and unfair when Defendants were likely responsible for the coercion of her expert witness. Plaintiff also submitted Dr. Lieppe's newly procured affidavit in support of the motion, along with supplemental responses to Defendants' statements of undisputed facts. Plaintiff claimed that her newly filed affidavit and responses raised issues of material fact, precluding summary judgment. Lastly, Plaintiff requested relief from the court's judgment based upon counsel's excusable negligence in failing to file an expert affidavit prior to the court's hearing. Counsel explained that he was "thrown into a crisis" by the sudden loss of Nurse Ogle as an expert witness and that he spent his time briefing the motion for a continuance rather than securing Dr. Lieppe's affidavit.

Defendants opposed the motion, claiming that Plaintiff had been provided more than an adequate amount of time to procure an expert and submit an affidavit in response to the pending motions for summary judgment. Defendants noted that Plaintiff submitted a certificate of good faith, certifying that she had consulted with a competent expert prior to filing suit. Yet, no affidavit from any expert was filed prior to the hearing.

Following a hearing on the motion, the court denied the motion to alter or amend the judgment, finding that relief was not warranted when Plaintiff had sufficient time in which to secure an expert but failed to do so without reasonable explanation. The court further held that the late-filed supporting affidavit was inadmissible because Dr. Lieppe was unfamiliar with the medical community at issue. Lastly, the court denied relief based upon counsel's alleged excusable neglect. This timely appeal followed.

## II.    ISSUES

We consolidate and restate the issues raised on appeal as follows:

A.      Whether the court abused its discretion in denying Plaintiff's motion to continue and for an evidentiary hearing on the issue of witness coercion.

B.      Whether the court erred in denying the motion to alter or amend.[2]

## III.    STANDARD OF REVIEW

"This court reviews a trial court's decision to deny a motion for a continuance under the abuse of discretion standard of review." *In re A'Mari B.*, 358 S.W.3d 204, 213 (Tenn. Ct. App. 2011) (citing *State Dep't of Children's Servs. v. V.N.*, 279 S.W.3d 306, 317 (Tenn. Ct. App. 2008)). Likewise, this court reviews a denial of a motion to alter or amend a court's judgment under an abuse of discretion standard. "A trial court abuses its discretion only when it 'applie[s] an incorrect legal standard or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining.'" *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999)). If a discretionary decision is within a range of acceptable alternatives, we will not substitute our judgment for that of the trial court simply because we may have chosen a different alternative. *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999).

---

[2]Plaintiff does not raise an independent issue relating to the court's grant of summary judgment. Instead, she claims that reversal is warranted (a) if the court abused its discretion in denying the motion for a continuance and evidentiary hearing or (b) if the court erred in denying the motion to alter or amend.

IV.    DISCUSSION

A.

Rule 6.02 of the Tennessee Rules of Civil Procedure provides as follows:

When by statute or by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may, at any time in its discretion, (1) with or without motion or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order, or (2) upon motion made after the expiration of the specified period permit the act to be done, where the failure to act was the result of excusable neglect[.]

Plaintiff argues that the court abused its discretion in denying her motion for a continuance and an evidentiary hearing based upon the alleged witness coercion. She asserts that her motion established the importance of Nurse Ogle's testimony and the fact that Nurse Ogle had been intimidated from submitting her testimony. Defendants respond that Plaintiff failed to properly support her claim of coercion.[3]  Further, Defendants claim that Plaintiff had engaged in extensive discovery and was given adequate time in which to submit an expert affidavit prior to the hearing. Plaintiff issues a reply brief in which she claims that the continuance at issue was only requested as an immediate need in light of Nurse Ogle's unexpected withdrawal of her testimony.

This court has provided the following guidance regarding review of a trial court's ruling on a motion to continue:

Decisions regarding continuances are fact-specific and motions for a continuance should be viewed in the context of all the circumstances existing when the motion is filed. This Court has held that the party seeking a continuance carries the burden to prove the circumstances that justify the continuance. In order to meet this burden, the moving party must supply some strong excuse for postponing the trial date. Factors relevant to the trial court's decision include: (1) the length of time the proceeding has been pending, (2) the reason for the continuance, (3) the diligence of the party seeking the continuance, and (4) the prejudice to the requesting party if the continuance is not granted.

---

[3] At the time of the alleged coercion, Nurse Ogle no longer worked at Ft. Sanders Regional Medical Center; however, she was employed by a different hospital in the same network.

*Howell v. Ryerkerk*, 372 S.W.3d 576, 580-81 (Tenn. Ct. App. 2012) (internal citations and quotations omitted). Our analysis of this issue is best served by considering the claims against Hospital and Nurse Adams separately from the claims against Dr. Ramaprasad and MHC.

### 1. Hospital and Nurse Adams

Plaintiff requested a continuance on September 27, 2016, after this action had been pending since December 2, 2015. The explanation offered in support of the continuance was the alleged witness coercion of Nurse Ogle, who was expected to establish the negligence of Hospital and Nurse Adams, along with the entirety of the nursing staff. Plaintiff offered an affidavit executed by counsel in support of her claim of coercion, while Hospital adamantly denied the accusation and provided an affidavit in support of their denial. Plaintiff sought the continuance to obtain admissible evidence of the claimed intimidation, if possible, and to adequately respond to the motion for summary judgment in light of her unexpected loss of an expert witness. Plaintiff has suffered extreme prejudice as a result of the denial of the continuance as evidenced by the grant of summary judgment when she was left without an expert from which to respond to pending motions as it related to Hospital and Nurse Adams. With these considerations in mind, we hold that the trial court abused its discretion in denying the motion for an evidentiary hearing on the issue of witness coercion and the corresponding motion for a continuance. Accordingly, we also reverse the grant of summary judgment as premature and remand for further hearing on the claims alleged against Hospital and Nurse Adams.

### 2. Dr. Ramaprasad & MHC

Our analysis of this issue remains the same as it relates to the length of time the proceeding has been pending. However, the remainder of the factors must be analyzed differently. First, the reason for the continuance does not support a finding of relief as applied to Dr. Ramaprasad and MHC. We do not agree with Plaintiff that Nurse Ogle's testimony served as a necessary predicate to the procurement of Dr. Lieppe's affidavit. Plaintiff's summary of Dr. Lieppe's expected opinions established that Dr. Lieppe was expected to testify concerning two separate, unrelated issues, causation as it related to the nurses and Dr. Ramaprasad's alleged negligence. While Plaintiff still suffered prejudice as a result of the denial of the continuance, her diligence throughout the case as to these defendants was questionable when no expert affidavit had been secured in the more than eight months that the case was pending, despite her filing of a certificate of good faith establishing that an expert had been consulted and her summary of Dr. Lieppe's expected opinions. Accordingly, we hold that the trial court did not abuse its discretion in denying the motion for a continuance as to the claims against Dr. Ramaprasad and MHC.

B.

Plaintiff argues that the court abused its discretion in denying the motion to alter or amend when she submitted new evidence that established genuine issues of material fact. "The purpose of a Rule 59.04 motion to alter or amend a judgment is to provide the trial court with an opportunity to correct errors before the judgment becomes final." *In re M.L.D.*, 182 S.W.3d 890, 895 (Tenn. Ct. App. 2005). These motions should "be granted when the controlling law changes before the judgment becomes final; when previously unavailable evidence becomes available; or to correct a clear error of law or to prevent injustice." *Id.* These motions "should not be used to present new, previously untried or unasserted theories or legal arguments." *Id.* Further,

> [w]hen additional evidence is presented in support of such a motion, the trial court should consider [the following factors:] the moving party's effort to obtain the evidence in responding to the summary judgment; the importance of the new evidence to the moving party's case; the moving party's explanation for failing to offer the evidence in responding to the summary judgment; the unfair prejudice to the non-moving party; and any other relevant consideration.

*Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003).

This issue is pretermitted as to the claims raised against Hospital and Nurse Adams in light of our reversal of the court's grant of summary judgment. As to the remaining defendants, the evidence is undoubtedly important to Plaintiff's case, if deemed admissible. However, the remaining factors overwhelmingly weigh in favor of a denial of the motion. Plaintiff's effort in obtaining the information and explanation for the failure to obtain such information prior to the hearing are considerably lacking as applied to these defendants. This particular action was pending for approximately eight months prior to the hearing. This action was filed following Plaintiff's voluntary nonsuit of the original action in which extensive discovery was completed in response to pending motions for summary judgment. Plaintiff was well-aware of the need for an expert affidavit to respond to the motions but chose to wait until the last minute to procure one. The non-moving party would also suffer unfair prejudice by allowing the case to continue further, considering the overall age of the case.

Plaintiff has also claimed her counsel's excusable neglect in support of her request for relief from the court's judgment. Rule 59.04 "provide[s] a vehicle for seeking relief from orders entered as a result of mistake, inadvertence, or excusable neglect by a party's counsel." *Ferguson v. Brown*, 291 S.W.3d 381, 387 (Tenn. Ct. App. 2008) (footnote and

citations omitted). This court has provided the following guidance on the issue of excusable neglect in the context of a Rule 59.04 motion to alter or amend:

> Whether neglect is excusable is an equitable determination taking account of all relevant circumstances surrounding the party's omission. The relevant circumstances envelop the big picture of both causes and effects, including:
>
> (1) the danger of prejudice to the party opposing the late filing, (2) the length of the delay and its potential impact on proceedings, (3) the reason why the filing was late and whether that reason or reasons were within the filer's reasonable control, and (4) the filer's good or bad faith. These circumstances must be weighed both with and against each other because, if considered separately, they may not all point in the same direction in a particular case.

*Id.* at 388 (internal citations omitted). We, like the trial court, do not find any bad faith on counsel's part; however, the other factors, weighed both with and against each other, support the court's denial of the motion to alter or amend. With all of the above considerations in mind, we affirm the court's denial of the motion to alter or amend as to the remaining defendants, Dr. Ramaprasad and MHC. Accordingly, we need not address the sufficiency of Dr. Lieppe's affidavit as it relates to his familiarity with the medical community.

## V.    CONCLUSION

As to Hospital and Nurse Adams, we reverse the denial of the continuance and the grant of summary judgment. We remand for an evidentiary hearing on the issue of witness coercion and for further proceedings as may be necessary. The decision of the trial court is affirmed in all other respects. Costs of the appeal are taxed equally to the following parties: Bobbie Seals Stubblefield; Morristown-Hamblen Hospital Association d/b/a Morristown Hamblen Healthcare System; and Angela Adams, R.N.

_____
JOHN W. McCLARTY, JUDGE